Gaston, Judge,
 

 after stating the facts as above, proceeded as follows.
 

 The first question presented upon the pleadings is, whether under this bequest, the five children born after the death of the testator, and before the death of Littleton, be entitled to shares of the slaves bequeathed; and if so, the second question is, whether these children took, before the death of Littleton, vested interests which were capable of assignment, or which were transmissible to their representatives. The first of these questions has been definitely determined in
 
 Vanhook
 
 v.
 
 Rogers,
 
 3 Murph. 178; and both of them, we think, were, in effect, determined in
 
 Knight
 
 v.
 
 Wall,
 
 2 Dev. & Bat. Rep. 125. In the
 
 latter
 
 case, it is recognized as a general rule, that when a legacy or fund is given to a class of persons, by a general description, all those who can entitle themselves under that description, at or before the time when the will directs the payment of the legacy or division of the funds to be made, are entitled so a share thereof; and further, that when the property in a fund or chattels, is bequeathed in fractional interests
 
 in succession,
 
 as to one for life, and after his death to others, the interest .of the ulterior legatees vest, at the death of the testator, or as they come into being, if before the period fixed for enjoyment.
 

 It is insisted, however, by the counsel for the defen
 
 *591
 
 dants, that ¡¡tócase is distinguishable from that of
 
 Knight
 
 v.
 
 Wall,
 
 and that the legacy to the children of Bird Rogers did not vest before the death ofLittleton; inasmuch as
 
 here
 
 the testator did not bequeath a fractional interest in
 
 the negroes
 
 during the life of Littleton, but only of the
 
 hire and use
 
 thereof, and made no disposition of the
 
 corpus
 
 or property, distinct from the direction for its division at the death ofLittleton. To establish this distinction, and the conclusion drawn from it, reference has been made to elementary treatises of great respectability, Roper on Legacies, and Williams on Executors, and also to a number of adjudged cases in English Courts of Chancery. We have examined these treatises, and the adjudged cases referred to, and although they recognize the distinction pointed out, as worthy of attention, they do not, in our judgment, justify the conclusion drawn from it.
 

 When a legacy is payable at a future time, and there is doubt whether it be vested or contingent, the inquiry is whether the postponement is directed because of a character required in those who are to take, which character cannot be ascertained before the prescribed period, or because of the nature of the fund, and the convenient application of it to the purposes of the will. Where the final bequest is subject to, or following after, temporary interests, in the property beneficially bequeathed to others, it is presumed, that those to. whom the absolute property is given, are intended to
 
 take
 
 at all events, although the enjoyment is
 
 deferred,
 
 because, and to the extent, of those intermediate interests. But this, like every other rule with respect to the vesting or not vesting of legacies, is not an arbitrary and inflexible rule, but one of construction, adopted to ascertain the intention of the testator, and therefore yields to an opposite intent, whenever it is manifested. This intent may be indicated by the terms used, either in the temporary disposition, or in the final gift of the property. When a testator appears to have drawn a precise distinction between the
 
 interest
 
 and the
 
 principal
 
 of a sum of
 
 money,
 
 or between
 
 dividends
 
 of stock, and the
 
 capital
 
 stock itself, and to have bequeathed
 
 these
 
 as though they were distinct independent subjects, although in truth
 
 *592
 
 the former are but the fruits or produce of the latter; the presumption in favour of vesting the ulterior legacy is weakened, and readily yields to any further indications that the gift was designed to be conditional, depending on the character of the legatees, and not postponed merely because of previous arrangements with respect to the subject of the gift. We are not aware that a similar distinction has been taken in the bequest of chattels
 
 other
 
 than money or stock, contradistinguishing the use or profits from the temporary ownership of the chattels, and we think that it would not be taken unless the terms of the will showed that such distinction was
 
 clearly
 
 contemplated by the testator; since undoubtedly, in ordinary discourse, as well as in legal construction, the use or profits of a chattel for life, and the loan of the chattel itself for life, are of equivalent meaning and operation. This seems to us the fair result, as applicable to the argument before us, to be collected from the adjudged cases as well as the elementary treatises referred to. Mr Roper in his valuable work, discussing the inquiry “ when legacies will vest, notwithstanding they be given in words purporting to constitute the gifts and times of payment one and the
 
 same,”
 
 lays it down, (Roper on Legacies, chapter 10, section iii. parag. 2, vol. 1, page 392, Amer. ed.) that when the intermediate interest is bequeathed beneficially as
 
 to, or in trust for one
 
 for life, and there is a
 
 direction to transfer the fund
 
 after his death to another absolutely, and “ the person to whom the absolute property is limited, will take an immediate vested interest in the subject, since such bequests are in the nature of remainders, the rule as to which is, that the interest of the first and subsequent takers vest together.” In the third or succeeding paragraph of the same section, page 396, he proceeds to notice the distinction which we are considering. “ It has been settled,” he observes, “ by a variety of cases, that if only the
 
 interest
 
 or
 
 dividends
 
 of property be bequeathed for life, and the context of the will shows that no interest in the
 
 principal
 
 was intended to pass until after the determination of the life estate, the remainder will not vest during the continuance of the particular estate, because there is no •disposition of the
 
 capital
 
 distinct from the period appointed
 
 *593
 
 for the payment or distribution of it; but to prevent the vesting of the remainder, the contents of the will must clearly show such to be the testator’s intention, for we have seen, that whether the
 
 interest
 
 or
 
 the fund
 
 itself be given to A. for life, with remainder to B., absolutely, the remainder will vest in B. at the death of the testator, the intent being, that B. should have the
 
 capital,
 
 at all events, at the demise of A. on whose account alone, the enjoyment of it by B. was postponed.” The observation of Mr. Williams, as applicable to this inquiry, are less full and explicit than those of Mr* Roper, but evidently refer to, and substantially adopt them.
 

 The cases cited by the counsel for the defendants, will warrant no other inference than that herein-before stated. In
 
 Billingsley
 
 v.
 
 Wells,
 
 3 Atk. 219, there was indeed a devise of the
 
 interest
 
 of one thousand five hundred pounds to Capel Billingsley, the testator’s brother, for life, and after his decease, of the
 
 principal sum,
 
 to the younger sons and daughters of his brother Capel, and it was held that the ulterior legacy was contingent during the life of the first legatee. But besides the distinction taken between the interest and the principal sum, there were unequivocal
 
 indicia
 
 in the will, that the gift was confined to the younger sons and daughters which his brother should leave living at his death. Among other expressions in the will were these, “ but my express will and meaning is, that no older son in case there shall be more than one son, nor any elder daughter, if there be
 
 only
 
 daughters of my brother
 
 living at his decease,
 
 shall have any part, share, or interest in the one thousand five hundred pounds.
 

 At the date of the will, and at the time of the testator’s death there were living one son and two daughters. The words therefore, “ but in case he should have
 
 only
 
 daughters,” necessarily referred to a future state of things; excludes the
 
 son
 
 in case he died before that state arrived, and had the
 
 effect,
 
 in Lord Haudwicke’s opinion, to
 
 de-scribefurther
 
 the persons who were to take the benefit of the legacy : and “ what,” (said Lord Hardwicke,) do the words living at his decease refer to? undoubtedly to both members of the sentence, and is a further description,
 
 videlicets
 
 
 *594
 
 that should there be such sons or such daughters, be they one or he they many who should be living at the time of their father, Cape! Billingsley’s decease. These words are not only descriptive of the child excluded, but likewise of the children which are to take.”
 
 Ford
 
 v.
 
 Rawlins, 1
 
 Sim. & Stu. 328, (1 Cond. Eng. Ch. Rep. 167,) was not decided upon the distinction which we are now examining. In that the testator left to the use of his wife, furniture, plate, books and jewels, which he desired might be distributed among their children when the youngest attained twenty-one, at her and his executor’s discretion; and it was held that there was no direct gift to the children, but only a power to the widow and executors to distribute amongst the children,
 
 at their
 
 discretion, certain specific articles, when the youngest came of age
 
 :
 
 that this discretion was meant to be applied to the circumstances of the children as they came of age, and could have no application to the children who had died in their infancy. Nor was the decision in
 
 Haughton
 
 v.
 
 Whitgreave,
 
 1 Jac. & Wal. 146, founded upon this distinction. The testator there gave not the
 
 use,
 
 but left the
 
 property
 
 itself to his widow for life, and after his death gave it to trustees in trust to sell and pay the money arising from the sale to certain persons and the survivors and survivor of them. It was held, that there was not only no bequest to those persons before the death of the widow, but that the subject-matter did not exist till then in the form in which it was given; and that the words “ survivors or survivor of of them,” in the clause containing the gift referred to the death of his wife, as the period when it was to operate; and that the testator must therefore be understood to mean, such as survived at the death of his wife. In
 
 Pope
 
 v.
 
 Whitcombe,
 
 3 Russ. 124, (3 Cond. Eng. Chan. Rep. 323,).
 
 after
 
 a bequest to her brother for life of the interest in a fund directed to be vested by his executors, the testatrix,, from and after her brother’s death, gave the fund to her executors in trust for certain persons named,“and the survivors andsurvivorof them,share and share alike, to be paid or assigned to them respectively, as they should attain the’ age of twenty-one years, with interest in the mean tinté*
 
 *595
 
 and until they should be
 
 entitled
 
 unto and receive their shares respectively of the trust fundand that it was held upon the ground not only of the distinction drawn by the testatrix between the interest and the fund, but because of the special terms of the limitation of the trust in the fund, that she meant survivors or survivor at the death of his brother. In
 
 Batsford
 
 v.
 
 Kebbell,
 
 3 Ves. Jr. 363, there was not a disposition of a fractional interest to one person, and a gift of the ulterior interest to another. All the dispositions were to and for the benefit of one and the same person. The testator gave to Robert Endley the
 
 dividends
 
 that should become due upon certain stock
 
 until
 
 he should arrive at the age of thirty-two years, and then the executors should transfer to him the stock itself. Robert Endley died before he attained the age of thirty-two; and the question was, whether the stock should be transferred to his executor, or to the residuary legatee of the testator. The Chancellor Lord Rosslyn notices the precise distinction taken by the testator between the
 
 dividends
 
 and the
 
 capital stock,
 
 which are usually recognized as distinct subjects of bequest, and of the case therein differing from those where the thing is given, and the profit of the thing is given, which are considered but as dispositions of different interests in the same thing, remarks, that the gift here was in the direction for payment, which attached to the legatee only upon his arriving at the age of thirty-two: that were it to' be construed an absolute gift, and not conditional upon the legatees reaching that age, he must in effect strike out the suspension of the fund until that age ; for the legatee being entitled to the fund as well as to the dividends, he would then be the uncontrolled owner; and therefore declared1 that in the event which had happened the stock was not taken out of the residue, and should be transferred to the-testator’s residuary legatee. The other cases relied upon-in the argument,
 
 (Thicknesse
 
 v.
 
 Liege,
 
 3 Bro. Par. Cas. 365;
 
 Reeves Brymer,
 
 4 Ves. 692;
 
 Bennet
 
 v.
 
 Seymour,
 
 Ambler, 521;
 
 Smith
 
 v.
 
 Vaughan,
 
 Vin. Abr. title Devise. 381, pl. 32, and
 
 Spencer
 
 v.
 
 Bullock,
 
 2 Ves. Jr. 687,) have been critically examined by Mr. Roper, in the concluding part of the section already referred to, and the peculiar
 
 *596
 
 features in them manifesting a plain intent to restrict the absolute bequest to those who should be in existence at a particular period, and making the circumstance of being
 
 then
 
 alive a condition precedent to their taking, have
 
 been
 
 clearly and accurately pointed out.
 
 Alt
 
 the cases are consistent with and justify the general doctrine which we have quoted from him. None of them show that where a testator, after the disposition of a partial beneficial interest, gives the
 
 thing
 
 itself to others, the principal legacy is to be deemed contingent on the event of the legatee’s living to the period of distribution, merely because in terms the use or profit of the subject of the gift, and not the subject itself, was disposed of partially in the first instance.
 
 Devisme
 
 v.
 
 Mello,
 
 1 Bro. Ch. Ca., appendix, 537;
 
 Taylor
 
 v.
 
 Langford,
 
 3 Ves. Jr. 119;
 
 Monkhouse
 
 v.
 
 Holmes,
 
 1 Bro. Ch. Ca. 298;
 
 Benyan
 
 v.
 
 Madison,
 
 2 Ibid. 75;
 
 Wadley
 
 v.
 
 North,
 
 3 Ves. 364;
 
 Middleton
 
 v.
 
 Messenger,
 
 5 Ibid. 140;
 
 Walker
 
 v.
 
 Shore,
 
 15 Ibid. 124, are decisive to show, that whether the thing or the use of it be given in the first instance, the ulterior and final bequest is a vested legacy, unless a contrary intent be manifest upon the will.
 

 The law leans in favour of the vesting of legacies, because the convenience of the legatees and the interests of society are opposed to the tying up of property and keeping it out of the commerce of life. It favours the vesting of legacies, more especially when given to children or those standing in a like relation to the testator, because it presumes that testators naturally desire, that the families of legatees, who die before the time for actual receipt of the legacy shall succeed to the provision made for their parents. And it also favours the vesting of legacies, because it will not
 
 intend
 
 that the testator meant to die partially intestate. All these reasons operate in the present case. It is apparent from the nature of the provision made for Littleton, a mere provision
 
 for feeding, clothing
 
 and
 
 keeping
 
 him decently until his death, that he was incompetent, or at least considered by the testator incompetent, for the business of life, and as requiring
 
 only
 
 sustentation while he lived. The testator left no portion to his son Bird, and cautiously guarded against
 
 his
 
 inter
 
 *597
 
 ference with the portion left to
 
 Ms
 
 children — and left to them simply as
 
 Ms
 
 children — charged with the maintenance of their unfortunate uncle. Can it be supposed, that the testator did not intend that his son Bird’s children should at all events, subject only to the charge, have the benefit of this portion ? Is it to be inferred, that if these children should, before their uncle’s death, arrive at an age to form matrimonial engagements and enter upon the duties of active life, they should not have the power of making such dispositions of their interests in this portion, as prudence might suggest, or their necessities require; or that if they should all die before their uncle leaving families,
 
 these
 
 should succeed to no part of it ? Such however, would be the consequences of construing the bequest to be contingent, for it is certain that the concluding words of the bequest “ and to their heirs” are words of limitation, and that the children of these legatees, could take only through succession to their parents, and not by way of substitution. Moreover, if this bequest be held to be contingent, then notwithstanding the clause immediately following, and purporting to be a disposition of the residue of the testator’s estate, he nevertheless died partially intestate; for it has been already decided in the case of
 
 Vanhook
 
 v.
 
 Rogers,
 
 before referred to, that by force of the words “ to be divided among my son Bird’s children as aforesaid” (see 3 Mur. 178,) there is such a reference in the residuary clause to that immediately preceding it, that the property given as a residue is bequeathed to
 
 the same persons
 
 and
 
 in the same manner,
 
 as the negroes now in controversy. If the bequest of the negroes be contingent upon some one of these persons surviving their uncle, and attaining the age of twenty-one, so must be the other, and then no disposition has been made of the property in the -event that such contingency should not happen.
 

 It is the opinion of the Court, and must be so declared, that all the children of Bird Rogers, who were born before the period of distribution, which according to the facts admitted, was in September 1836, when Littleton Rogers died, took vested interests in the negroes in dispute, which interests were assignable, and upon the death of any of the
 
 *598
 
 legatees without assignment, were transmitted to their executors and administrators.
 

 There must be a reference to take the accounts prayed for, and to make a division. The consideration of the costs and of all other matters involved in the cause, is reserved until the coming in of the report, or until further directions shall be required by any of the parties.
 

 Per Curiam. Decree accordingly.