On the trial of the cause in Halifax Superior Court the introduction of parol evidence was objected to by which the knowledge of the testator as to his sister Stith being alive was proved to the jury. The admissibility of such testimony was one of the questions submitted to the Court.
In the argument which was made in this case for the defendant it was contended that George W. Long took an estate for life, by implication, on account of his being directed to pay the testator's (97) debts "out of the bequest made to him," and that the limitation immediately to his children made it an estate tail, which by the Act of 1784 became a fee simple.
Whether such effect resulted from the devise or not seems not material to consider. If such was the effect of the devise, it would then become necessary to inquire how the ulterior limitation would thereby be affected; for if by force of our act of Assembly of 1784 words which *Page 77 
before the act gave an estate tail are since made to pass a fee simple, why should not the ulterior limitation, upon an event which must take place during the life of George, be good by way of executory devise? Upon this part of the case, however, no opinion is intended to be given, as we are all of opinion the plaintiffs have no title. Nor does it, in my view, become important to decide the point in relation to the parol evidence, for if the testator had expressly mentioned in the will that his sister Stith was alive, and had given her a legacy, such circumstance could have had no influence, and I should then be equally clear the plaintiffs could not recover.
In construing a will, the intention of the testator is the material object, and this intention is to be collected, in the first place, from what he has declared, by giving to the expressions used their true import as understood in law. But as words are the only medium by which the intention is to be conveyed, they will never be permitted to stand in the way when their import would pervert instead of perform what they were intended for. Therefore, if it should appear from the will of McKinnie Long that he intended the children of Mrs. Stith to take immediately on the death of George without children, though their mother should be living, such intent must necessarily control the meaning of the word "heirs," and therefore it could not be understood according to its technical meaning. It would then be evident the testator intended heir apparent or issue; but if no such intention can be collected from any part of the will, or from the fact found, then we can only look for the meaning of the testator from the words he has used, and must take that to be his intention which his words import. (98)
In the present case the testator has used the expression "heirs," which is a word of legal import, and means those who shall have succeeded to the real estate of another by inheritance. Now, until it shall be shown that the testator did not understand the term he has employed, either by a reference to the whole will or from the fact found, he must be understood
to have meant what he has said.
From the will it is not pretended that any such inference is drawn; but it is contended that the fact of his knowing his sister then to be alive, as found, will have that effect.
I can draw no such conclusion. The devise to the heirs of Mrs. Stith is not of that kind or description which, though the enjoyment is deferred, is to vest immediately; if it were, the testator's knowledge of her being alive would then show that he did not understand the meaning of the word he had used, as "memo est heirs viventis." His intention then would be manifestly frustrated by allowing to his words their true meaning. *Page 78 
It has, however, been contended that whenever the testator takes notice the ancestor is living, a devise to the heirs of such ancestor is to be considered as to his heirs apparent; and Long v. Beaumont, 1 P. Wms., 229, and Brooking v. White, 2 Black., 1010, are cited as authorities.
If those cases proved that there was such a stubborn rule of law, I should certainly hesitate before I would decide otherwise. But they prove no such rule. They only determine that when it appears from the will that the testator intended the devisees' estate should vest immediately, though such devisees are called heirs, yet the estate shall go according to theintent of the testator, and by the word heirs will be intended heirsapparent, if their ancestors be then living.
Long v. Beaumont is, shortly, this: The testator devises to (99) trustees for twenty-one years, remainder to the first son of his own body, and his heirs male, and, in default, to the heirs of the testator's body, and in default of such heirs, to his cousin John Spark for ninety-nine years, remainder to his first son in tail male, and in default of such issue, to the heirs male of his aunt, Elizabeth Long, and in default of such issue, to his own right heirs. Beaumont, the defendant, was then heir apparent of the testator, and there was a devise of an annuity to him. The testator, in his will, took notice that his aunt, Elizabeth Long, was alive by devising her also a legacy. Now, this case only proves (what has not been doubted, in the examination of the case under consideration) that technical expressions are to bend to the intent of the testator, or, in the language of Lord Coke, that the barbarous language of the testator is to be so moulded as to effectuate his intention.
The case cited is that of a vested remainder in tail, to the heirs of the aunt of the testator, with remainder in fee to the heir at law in default of such issue. I have said a vested remainder, because the estate was not liable to be defeated by any event unless the limitation to the heirs of a person then alive made it contingent; and the Court determined that there was sufficient upon the face of the will to discover that the testator did intend those he called "heirs" should take whilst their ancestor was living.
The estate, therefore, vested at the death of the testator, though theenjoyment was postponed.
In deciding that case the Court has determined that the word "heirs" may be made to mean children, issue, or heirs apparent, according to the intent
of the testator, and as, in that case, the testator had postponed the heir at law, the then plaintiff, till the issue of his aunt was exhausted, the devise to the "heirs" of the aunt must be understood issue; *Page 79 
for, indeed, no one else could take the estate. In aid of that construction the testator's knowledge that his aunt was then alive was relied on as a circumstance. The Court also laid hold of the words lawfully begotten, as connected with the heirs of the aunt, which they said was equivalent to heirs then living.
The case from Blackstone was where the testator devised to (100) his wife an annuity for eighty years, charged upon the premises, and after her death an annuity of 40s. per annum to each of his daughters, Elizabeth, Mary, and Ann, for the same period, if they, respectively, live so long; and to her daughter Margaret, the defendant, an annuity for seventy years, if she and the testator's son, Richard, should jointly live so long. Subject to the said annuities, he devised the premises to Margaret for two years from and after his decease, with remainder to his son Richard, if then living, for ninety-nine years, if he lived so long; and subject to such ninety-nine years term, he devised the same to his son Richard and his heirs male, and to the heirs of Margaret, jointly and equally, and to their heirs and assigns; and for want of heir male of the body of Richard, at his death, he devised the premises charged, etc., to the heirs and assigns of Margaret, lawfully begotten, to hold to the heirs and assigns of the said Margaret.
Margaret had a son at the testator's death. Richard died leaving a son, living Margaret, and the contest was between the heir of Richard and the children of Margaret, who claimed to take under the appellation of heirs of Margaret.
In that case De Grey, C. J., said: "The intention of the testator is clear that the same favor should be extended to the heirs of Margaret as to the heirs male of Richard. He took notice that his daughter was living, by leaving her a term and a subsequent annuity; and he meant a presentinterest should vest in her heir, that is, her heir apparent during her life.
Blackstone thought that the testator's varying the tenure of Margaret's annuity from that of the other sisters, by making hers dependent on the joint lives of herself and Richard, was proof that the testator had calculated Margaret might survive Richard, and therefore, as on Richard's death the estate was to go to his heirs male and the heirs of Margaret, and at a time when the testator calculated Margaret might be living, the word "heirs" must be understood issue.
These cases need only be stated to show their want of application to the one now under consideration. Was any present vested estate devised to the heirs of Mrs. Stith which they were to take on (101) the death of the testator, though the enjoyment was deferred? To make the most of their case, it was only an executory devise of the *Page 80 
fee simple, after the previous fee to the children of George. During the lifetime of George nothing ever passed to the heirs of Mrs. Stith, nor was it intended by the testator. If George should have children, the estate became vested in them, without a possibility on the part of the plaintiffs. From no part of the will is it to be collected that it was the intention of the testator the heirs of Mrs. Stith should take the estate, though she might be alive. Nor can we ascertain, like the case in Pr. Williams, that upon the death of George, without children, the estate was not to go over until a failure of Mrs. Stith's issue. What influence, then, can the facts found have in expounding the intention of the testator? Can it be inferred from any part of the will that the testator had calculated that Mrs. Stith might be alive when her heirs were to take? In short, does it appear that the intention of the testator will be frustrated by understanding him to have intended what he has said? It does not. And it is not in the power of human ingenuity to discover, from reading over the will, and the facts found, that the testator did not mean the heirs of Mrs. Stith, namely, those who should succeed to her real estate, after her death, were those intended to benefited by the devise. There is no ground to make such inference from the situation of the parties, as in any event the devise to the heirs of Mrs. Stith was never to vest till George's death, without having issue, and, by George having children, to be effectually prevented. The testator, therefore, might have calculated upon George's surviving his sister Stith.
In whatever way, therefore, I am capable of considering this question it seems to me there is no ground to doubt. Mr. Powell, in his excellent treatise on Devises, page 567, says: "It is necessary to the constitution of a devise that there be a devisee, certain, or capable of being (102) made, etc., and the law, therefore, requires every one claiming in that character to answer in all respects to the description the devisor has given." And, in page 369, upon the same subject, he continues: "Whenever a testator describes his devisee as heir of one generally, none can take under that description unless he fully answers it in all particulars; from whence it follows that none can take as such during the life of his ancestor, for `nemo est haves viventis.'" The author then, by way of illustration, puts the case: "One having two sons and two daughters devised his lands to the youngest son, in tail, and for want of such issue to the heirs of the body of his eldest son, and if he died without issue, that the land should remain to his two daughters in fee. The testator died; the youngest son died without issue, leaving the eldest, who had issue, and it was held by the whole Court he could not take." But the same author, after citing divers other cases decided upon the same principle, remarks: "But if the testator clearly show, by positive words, or if it must benecessarily inferred from facts, that he *Page 81 
meant one to take by the description of a particular heir, who was not
general heir, that intent shall be carried into execution." Under which description the cases from Pr. Williams and Blackstone are noticed.
Independently, therefore, of the conviction of my own understanding, the opinion I entertain is supported, as I conceive, by all the adjudged cases and elementary writers I have had an opportunity to examine.
Wherefore, I am of opinion there should be judgment for the defendant.*
* Judges HALL and HENDERSON gave no opinion in this case.