C. M. WITTY ET AL. v. ED. WITTY ET AL.

(Filed 15 November, 1922.)

**1. Wills—Interpretation—Intent—Estates—Remainders—Heirs—Descent and Distribution—Vested Interests—Title.**

Under a devise of lands to the testator's wife for life in lieu of dower, and at her death, the lands to be sold at public sale, and the proceeds equally divided "among his lawful heirs," the title will immediately vest in the testator's children at the time of his death, and will not be postponed to the death of his widow, when the distribution of the proceeds of the sale is directed to be made; and where at the time of the vesting of the estate there were several children of the testator living, but all of them died during the continuance of the life estate of the widow, the title to the whole of the lands having vested in the last surviving child under the canons of descent will pass to the devisee under the will of such child. *Grantham v. Jinnette,* 177 N. C., 229, cited and distinguished.

**2. Same—Canons of Descent.**

The law favors the early vesting of estates; and upon a devise of lands to the testator's wife for life, and at her death to be sold and the proceeds divided among "his lawful heirs," without qualifying words, the word "heirs" is to be taken in its natural and primary meaning as designating the ones on whom the law casts the estate immediately on the death of the ancestor, and the direction that the lands be sold and the proceeds divided does not affect this interpretation.

**3. Wills—Interpretation—"Heirs"—"Next of Kin"—Synonymous Terms —Words and Phrases.**

In construing a will the courts will ordinarily consider the words "heirs at law" as having the same meaning as the words "next of kin," in dealing with real property.

**4. Wills — Interpretation — Intent—Estates—Remainders—Inferences— Presumptions.**

A devise of lands to the testator's wife, in lieu of dower, and at her death to be sold "and the amount it brings equally divided among my heirs at law," cannot affect the interpretation that the title vested in his children upon his death, the enjoyment to commence after the falling in of the life estate, because of the fact that no gift in remainder by specific words had been used, the inference thereof being from the direction to sell the lands and divide the proceeds among his heirs.

APPEAL by plaintiffs and defendant, Elizabeth Terry, from *Harding, J.,* at September Term, 1922, of GUILFORD.

Civil action in ejectment and for a sale for division of certain lands, situate in Guilford County, North Carolina.

The evidence offered by plaintiffs tended to show the following facts: That Levi R. Witty died in January, 1872, seized and possessed in fee of the lands described in the complaint, and which are in controversy here; that he disposed of said lands by his last will and testament—the effect of the terms of which are in dispute; that his wife, Louisa Witty, who was given a life estate in the lands in controversy, survived her husband, and died on 16 December, 1920; that said Levi R. Witty was survived by five children, all of whom died before the death of his said wife and life tenant; that only one of these five children ever married, and the defendant, Mrs. E. M. Witty, is the wife of that one child, to wit, E. M. Witty; that no issue was ever born to any of said children, but that the defendant Mark Witty, Jr., is an adopted child of the testator's married child, E. M. Witty; that the defendant Elizabeth Terry is the only surviving brother or sister of the said testator, while the other parties to this action, except Mrs. E. M. Witty and Mark Witty, Jr., are all the nephews and nieces of said Levi R. Witty.

At the close of plaintiffs' evidence, and on motion of the defendants, there was a judgment as of nonsuit, from which the plaintiffs and the defendant Elizabeth Terry appealed.

*Brooks, Hines & Smith for plaintiffs.*
*Thomas C. Hoyle for defendant Elizabeth Terry.*
*William P. Bynum, King, Sapp & King, and Sidney S. Alderman for appellees, Mrs. E. M. Witty and Mark Witty, Jr.*

STACY, J. On the hearing, the title offered was properly made to depend upon the construction of the following clause in the will of Levi R. Witty:

"I give and devise to my beloved wife, Louisa, the plat or parcel of land (description not in dispute), to have and to hold her natural life or widowhood in satisfaction for and in lieu of her dower and thirds in all my real estate; at the death of my wife, or if she marries again, my will is that the aforesaid lands be sold at public sale (after due notice has been given) to the highest bidder, and the amount it brings equally divided among my lawful heirs. . . . My will is that the remaining portion of my lands be sold according to law to the highest bidder, and the amount equally divided among all my children, excepting my daughter Emma. She is to have $100 more than any of the other children."

The plaintiffs and the defendant Elizabeth Terry contend that under a proper construction of the foregoing clause in the will of Levi R. Witty, the property described in the complaint is to be sold after the death of his widow, Louisa Witty, and the proceeds divided among them and the other nephews and nieces of said testator living at the death of said Louisa Witty, and that the class to take is to be determined as of the date of her death.

The defendants, Mrs. E. M. Witty and Mark Witty, Jr., contend, as held by the court below, that by the will of said Levi R. Witty a vested remainder in fee was given to the children surviving at the testator's death, and that the remainder to the five children so surviving accumulated in the respective survivors as each of them died without issue, until the entire estate vested in E. M. Witty, the last one to die, and was devised by him to his widow, the defendant, Mrs. E. M. Witty, for life, and the remainder to his adopted son, Mark Witty, Jr.; and that these defendants are the owners and entitled to the possession of the lands in controversy.

The case turns upon the single question as to whether the interests in remainder are vested or contingent; and as to whether the testator's "lawful heirs" are to be determined as of the date of his death or at the death of his widow, the life tenant.

It is admitted that if vested remainders are created, the interests in remainder vested, upon the death of the testator, in the five children of his then living; that the vested interest of each of these five, as he or she died before the life tenant, accumulated in the survivors until finally testator's son, E. M. Witty, was the only living child and heir, holding all the remainder as a vested interest, and that when he died before the death of the life tenant, his vested right in the entire remainder passed by his will to the appellees, Mrs. E. M. Witty, his widow, as life tenant, and Mark Witty, Jr., as remainderman in fee.

In other words, if the remainders created are vested, the class of re-
maindermen is to be ascertained according to the general rule, *i. e.,* as
of the date of the death of the testator, and such being the case, the
appellees, Mrs. E. M. Witty and Mark Witty, Jr., are the devisees or
legatees of all of the fee in remainder. This was the holding of the
trial judge.

It is admitted, on the other hand, that if contingent remainders are
created, the contingency being that the class of remaindermen is not
to be ascertained until the death of the life tenant, then the appellants
are entitled, for themselves and other collaterals who did not appear,
to an order for the sale of the land in question, now in the possession of
the appellees, and for distribution of the proceeds.

It is undoubtedly the general rule of testamentary construction that,
in the absence of a contrary intention clearly expressed in the will, or
to be derived from its context, read in the light of the surrounding
circumstances, an estate limited by way of remainder to a class described
as the testator's "heirs," "lawful heirs," or by similar words descriptive
of those persons who would take his estate under the canons of de-
scent, had he died intestate, vests immediately upon the death of the
testator, and at which time the members of said class are to be ascer-
tained and determined. *Jenkins v. Lambeth,* 172 N. C., 468, and cases
there cited. 23 R. C. L., 549; note, Ann. Cas. 1917 A, 859; *Welch
v. Blanchard,* 33 L. R. A. (N. S.), 1, and note. This is not only the
general rule of construction, but it is in keeping with the natural and
primary meaning of the words themselves. *Wall v. Converse,* 146
Mass., 345; *Tuttle v. Woolworth,* 62 N. J. Eq., 532. "An heir," says
Blackstone, "is he upon whom the law casts the estate immediately on
the death of the ancestor." II Blackstone, ch. 14.

In *Bullock v. Downes,* 9 H. L. Cas., 1, *Lord Campbell* stated the rule
as follows: "Generally speaking, where there is a bequest to one for
life, and after his decease to the testator's next of kin, the next of kin
who are to take are the persons who answer that description at the death
of the testator, and not those who answer that description at the death
of the first taker. Gifts to a class, following a bequest of the same
property for life, vest immediately upon the death of the testator. Nor
does it make any difference that the person to whom such previous
life interest was given is also a member of the class to take on his death."

Of course, in dealing with real property, "heirs at law" takes the
place of "next of kin" in any statement of the rule.

This general rule has been recognized and approved by us in a num-
ber of cases, notably *Jones v. Oliver,* 38 N. C., 369; *Brinson v. Wharton,*
43 N. C., 80; *Rives v. Frizzle,* 43 N. C., 237; *DeVane v. Larkins,* 56
N. C., 377; *Newkirk v. Hawes,* 58 N. C., 268; *Pollard v. Pollard,* 83

N. C., 97; *Harris v. Russell,* 124 N. C., 554; *Wool v. Fleetwood,* 136
N. C., 471, and *Baugham v. Trust Co.,* 181 N. C., 406.

In the last cited case, *Allen, J.,* speaking for the Court, quoted with
approval the following from 40 Cyc., 1481: "As a general rule, the
death of the testator is the time at which the members of a class are to
be ascertained in case of a gift to the testator's heirs, next of kin, or
other relatives, unless the context of the will indicates a clear intention
that the property shall go to the heirs, next of kin, or other relatives at
a different time, such as at the time of distribution, or at the death of
the first taker, or at the date of the execution of the will. . . .
Where the gift is to the heirs or next of kin of another than the testator,
it ordinarily refers to the death of such other, unless the context of the
will manifests that the class shall be determined at a different time,
such as at the time of distribution."

In *Jenkins v. Lambeth,* 172 N. C., 468, the same rule is stated by
*Hoke, J.,* as follows: "It is undoubtedly the general rule that when a
testator, after a prior limitation of his property by will, makes, in
present terms, a disposition of the same in remainder to his own heirs
or right heirs, these heirs, nothing else appearing, are to be ascertained
and determined as of the time of his death. This is not only the
primary meaning of the word heirs, but the position is said to be favored
by the courts because in its tendency it hastens the time when the ulte-
rior limitation takes on a transmissible quality," citing a number of
authorities.

It will be noted in the case at bar, as in those cited above, that no
qualifying words are used before or after the phrase "my lawful heirs."
These words have a well defined meaning. Their significance is fixed
by law, and when they are used in a deed or will without any superadded
words or phrases, indicating a different meaning, they are to be under-
stood as having been used in their ordinary sense, and according to their
legal acceptation. *Rives v. Frizzle, supra; Harris v. McLaren,* 30 Miss.,
533.

Again, the fact that the direction is to sell the realty at the expiration
of the preceding particular estate and to divide the proceeds derived
therefrom ordinarily will not affect the general rule as to when the
remainder is to vest. *Vanhook v. Vanhook,* 21 N. C., 589; *Cropley v.
Cooper,* 19 Wall., 167; *Bates v. Spooner,* 75 Conn., 501; *Atchison v.
Francis,* 165 N. W. (Iowa), 587.

In the last case just cited, which contains an exhaustive review of a
number of cases on the subject, it is said: "Of the multitude of prece-
dents bearing upon the construction of wills in which the testator first
provides a life estate for his widow or other person and follows this by
a direction that upon the expiration of such life estate, the property

shall be divided or shall be sold and the proceeds divided between certain named persons, or members of a designated class of persons, and holding such remainder to be vested, we will cite a few illustrative cases. If we first look to jurisdictions other than our own we find, with very few exceptions, a unanimous holding that in such cases the beneficiaries named acquire a vested right therein immediately upon the death of the testator" (citing authorities from a number of jurisdictions).

And after a minute examination of some of the cited cases, the Court continues: "These quotations fairly reflect the holdings in all of the cases to which we have called attention on this branch of the cases under consideration. Indeed, after a somewhat extended research, we have found no case whatever in which the soundness of that rule is questioned or denied. It is true that here and there a precedent may be found in which the distinction we have pointed out has not been noticed, but in such cases the omission would seem to have occurred simply because counsel failed to raise or to argue the question."

And further it is said: "In principle there is no difference, so far as the vesting of the right is concerned, between a direction to divide the property and a direction to sell the property and divide the proceeds. A direction to sell and divide does no more than to work an equitable conversion of the real property as of the time of the death of the testator, and the gift, technically speaking, becomes a bequest instead of a devise, but the right of the beneficiary therein vests alike in either case."

In *Hoover v. Smith,* 96 Md., 393, the provisions of the will under consideration were as follows: "I devise and bequeath to my beloved wife, Elizabeth, all my property, real, personal and mixed, to have and to hold the same during her natural life, or as long as she shall continue to be my widow. After either of the above events the property to be sold and divided equally among my lawful heirs."

In construing this clause, which is strikingly similar to the one in the instant case, the Court said: "The law favors the early vesting of estates, and 'courts will, in the absence of plain expressions, or an intent plainly inferable from the terms of the will, adopt the earliest time for the vesting where there is more than one period mentioned.' *Straus v. Rost,* 67 Md., 476. It is a well recognized rule of construction that in doubtful cases the interest shall be deemed to be vested in the first instance, rather than contingent, unless the instrument under consideration does not admit of such construction. When a testator has employed terms in his will which in their ordinary signification are in accord with such familiar and fixed rules of law, it should require very clear expressions elsewhere in the will to justify the court in giving such terms some other and unusual meaning. When, therefore, a testator directs that after his wife's death or marriage his property is to

be sold and divided equally among his 'lawful heirs,' and makes no other disposition of the remainder after his wife's death or marriage, when and in whom does such remainder vest? At common law an heir is 'he who is born or begotten in lawful wedlock, and upon whom the law casts the estate in lands, tenements, or hereditaments immediately upon the death of his ancestor.' In 15 Ency. of Law (2 ed.), 322, it is said: 'A devise to heirs, whether to one's own heirs or to the heirs of a third person, designates not only the persons who are to take, but the manner and proportion in which they are to take. Where there are no words to control the presumption, the law presumes the intention to be that they take as heirs would take by the rules of descent'; and again it is there said: 'It is well settled that a gift to the heirs of one will be construed as referring to those who are such at the time of the ancestor's death.' If, then, we adopt the ordinary meaning of the term used by the testator (lawful heirs), we find that he presumably intended that those who would be entitled to his real estate at the time of his death should get the benefit of the proceeds of the sale. It cannot be successfully contended that merely because he gave his wife an estate for life, or as long as she continued to be his widow, the vesting of the estate given the heirs should be postponed until the widow's interest ceased."

While the general rule of construction is stated to be that a bequest or devise by way of remainder to the "heirs" of a testator will be construed as referring to those who are such at the time of his death, yet the authorities all agree that this rule must give way to the controlling rule of interpretation, that the intent of the testator is to govern, provided it does not conflict with the settled rules of law. In fact, this is the cardinal principle in the interpretation of wills to which all other rules must bend. *Sears v. Russell,* 8 Gray (Mass.), 86. Thus it has been held that contingent and not vested remainders were created where the testator, in making an ulterior disposition of property after a particular life estate, uses such expressions as "to such of my sons as may be living at their mother's death," or "surviving at her death," or "to the representatives of such as may have died before her death," showing clearly that not only the enjoyment of the remainder, but also the right to take it was intended to be postponed until after the expiration of the preceding life estate. *Whitesides v. Cooper,* 115 N. C., 570; *Bowen v. Hackney,* 136 N. C., 187; *Freeman v. Freeman,* 141 N. C., 97; *James v. Hooker,* 172 N. C., 780; *Jenkins v. Lambeth,* 172 N. C., 466; *Thompson v. Humphrey,* 179 N. C., 44; *In re Kenyan,* 17 R. I., 149.

But in the case at bar we have no such expression as any of those just mentioned. It is provided that the remainder after the life estate is to be divided equally among "my lawful heirs," *simpliciter,* and this imports a division among those who were the heirs of the testator at

his death, and who took in right at that time, though they were not to come into actual possession and enjoyment until the previous benefit, intended for their mother, should terminate by her death. *Wright v. Gooden,* 11 Del., 414.

Appellants contend, however, for a contrary construction under authority of *Grantham v. Jinnette,* 177 N. C., 229. In that case the Court was construing the will of a *nullius filius,* one of those melancholy characters, in law as in life, who had no heirs, either at his death or at the death of his widow, the first taker under his will. Those claiming the lands at the death of the life tenant were claiming only through those connected to the testator by illegitimacy. The main question was between the widow's descendants and the escheat right of the University. The widow's descendants claimed that she was both life tenant and remainderman; that she not only took the life estate, but was the testator's lawful "heir"; and that the whole fee merged in her. The University contended that the widow could not be life tenant and heir; that the statute makes a widow heir only when the property is not disposed of by will; that this testator did dispose of his property by will, and the widow was not therefore his heir; and that therefore the testator, as to the remainder in fee, was without heirs. The Court held this to be correct, and that the fee escheated to the University. There was no question before the Court as to whether the remainders were vested or contingent.

The argument there advanced that a direction to convert the land into personalty and to divide it after the death of the life tenant indicated an intention to ascertain the testator's heirs as of the time of the falling in of the life estate, rather than as of testator's death, was used in connection with the significant fact that at the time of the making of the will there was only one person to whom the testator could have considered as coming within the class of his "heirs," and at the death of the testator, there was still only one, and that, therefore, his direction to divide the remainder among a plurality of takers showed an intention of the testator that the one person who at his death would presumably constitute the class should not take the remainder (as well as the life estate), but that he presumed that at the end of the life estate he might have a plurality of heirs.

We have no such case here.

Another significant fact in the *Grantham v. Jinnette case, supra,* and a fact upon which the Court laid emphasis in its opinion, was that the property directed to be sold and divided was not simply all of the property which had been left to the wife for life, but was "all property, real and personal, *left by her* under item 3 of the will."

This decision cannot be held to sustain the contention of the appellants in the case at bar.

Nor do we think the fact that the will contains no specific words of gift in remainder, other than the inference from the direction to sell and to divide the proceeds, can be held to delay the vesting of said estates, since the enjoyment of the remainders is postponed only in the interest of the life tenant, and not in view of the character or quality of the remaindermen. *Fairly v. Kline,* 2 Pennington (N. J.), 754; 4 Am. Dec., 414; *In re Thomman's Estate,* 161 Pa., 444; 29 Atl., 84. It is clear from the face of the will that the distribution among the testator's children was postponed in order to make a comfortable provision for the widow, and that, too, "in lieu of her dower and thirds," and not on account of anything affecting the children (their arriving at a certain age, marrying, etc.) so as to cause him to attach any condition to the legacies.

In Underhill on Wills, sec. 866, this position is treated as follows: "A legacy will the more readily be construed as vested in every case where there is no other gift than a direction to pay or to distribute money, if it is apparent that the payment or the distribution was postponed, not in order that the legatee should personally perform some act or acquire some personal qualification as a condition precedent to payment, but where the postponement is clearly intended for the benefit of some one who takes a prior interest, or, in the language of the cases, where the postponement is 'for the convenience of the estate.' "

After a careful investigation of the record and the authorities on the subject, we are of the opinion that his Honor's judgment was correct, and that it must be upheld.

We deem it proper to say that, in considering this appeal, we have found the excellent briefs filed by counsel on both sides of material aid and assistance.

Affirmed.