HANNAH LEE BELL STEPHENS v. LANELLE MARTIN CLARK AND HUS-
BAND, CORNELIUS CLARK; AGNES MARTIN LEE AND HUSBAND,
CLEON LEE; GRACE MARTIN STEWART AND HUSBAND, JOHN W.
STEWART; ALAN EDWARD SEPHES (HUSBAND OF MELBA MARTIN
SEPHES, DECEASED), AND HOMER J. INGLE, GUARDIAN AD LITEM OF
THOMASENA MARSHALL AND DURAND SEPHES, HEIRS AT LAW OF
MELBA MARTIN SEPHES.

(Filed 6 January, 1937.)

1. Wills § 33a—Rule that devise shall be construed to be in fee held inap-
plicable to language creating active trust with provision vesting estate
in others upon termination of the trust.

Testatrix died seized of certain lands, including the "homestead"
devised to her by her father's will, with an equitable charge thereon for
the benefit of his widow, testatrix' stepmother. Testatrix' will provided
that her husband should have full and entire possession of her realty and
certain personalty, and that the rents therefrom should be used in keep-
ing up the "homestead" during the life of her stepmother, and after the
death of her stepmother the lands should go to her heirs. *Held:* The
devise created no interest in the lands in favor of testatrix' husband, but
devised the lands to him in an active trust for the purpose of carrying
out the wishes of her father for the care of his widow, and the rule that
an unrestricted devise will be construed to be in fee simple, C. S., 4162,
has no application to the devise to the husband as trustee in an active
trust with direction for the vesting of the lands in her heirs upon the
termination of the trust.

2. Wills § 33d—Trust is created by language evincing intent to do so.

A devise of land to one person with direction that the rents therefrom
be used for the benefit of another, creates an active trust in accordance
with the express intention of the testator, even though the testator does
not use the words "trust" or "trustee," no particular language being
necessary for the creation of a trust if the intent to do so is evident.

3. Adverse Possession § 4a—One tenant may not hold adverse to other
tenant until there has been an ouster.

The possession of one tenant in common is the possession of all, and one
tenant may not hold adversely to his cotenant until there has been an
ouster, which is possession accompanied by acts evincing an intent to hold
solely for the possessor in the character of sole owner to the exclusion
of and in opposition to the claims of all others, and the evidence in this
case *is held* insufficient to establish such ouster.

4. Adverse Possession § 12a—

Where a will creates an active trust in the lands and provides that
title should not vest in the ultimate takers until the termination of the
trust, the statute will not run against a remainderman until the termina-
tion of the trust and the vesting of his right to possession.

**5. Wills § 34—Devise to "legal heirs" in absence of clearly expressed intention to contrary vests the land in accordance with canons of descent.**

Testatrix created an active trust and provided that, upon the termination of the trust upon the death of the beneficiary, all her property should go "to the legal heirs." *Held:* In the absence of language clearly showing a contrary intent, the words "legal heirs" will be given their definite legal meaning, and take the property to testatrix' heirs according to the canons of descent as of the date of testatrix' death, and testatrix' brother living at the time of testatrix' death is entitled to an undivided interest in the estate with the children of testatrix' sister, who predeceased testatrix.

**6. Wills § 33c—**

A devise of an estate to a class described as heirs or legal heirs, either immediately or after the termination of a particular estate, passes the property or the remainder to testatrix' heirs as determined by the canons of descent as of the date of the death of testatrix.

**7. Wills § 34—**

Where a will devises property after the termination of an active trust to testatrix' heirs or legal heirs, who are the legal heirs under the canons of descent is a question of law for the courts, after the jury has determined the identity of persons claiming relationship with testatrix.

**8. Wills § 31—Where language of will is not ambiguous, parol evidence is not competent to contradict, add to, or explain its meaning.**

Where a will devises property to testatrix' heirs without expressions limiting or qualifying the phrase, the estate goes to the heirs as determined by the canons of descent, and the language being clear and unequivocal, parol evidence tending to show that testatrix intended to limit the term to include children of a deceased sister to the exclusion of testatrix' brother her surviving, is properly excluded.

APPEAL by defendants from *Hill, Special Judge,* at January Term, 1936, of FORSYTH. No error.

This cause was instituted originally by William T. Butler, Jr., the predecessor in title of the plaintiff, for partition of described lands. The defendants denied plaintiff's title and pleaded *sole seisin.*

Issues were submitted to the jury and the following verdict rendered:

"1. Was the William T. Butler, Jr., under whom the plaintiff claims, the brother of and did he survive Isabella Wyche, deceased, as alleged in the complaint? Ans.: 'Yes.'

"2. Is the plaintiff, Hannah Lee Bell Stephens, the successor in title to such interest as the said William T. Butler, Jr., had, if any, in the lands described in the complaint, at the time of the institution of this action? Ans.: 'Yes.'"

From judgment on the verdict decreeing plaintiff entitled to an undivided interest in the land and remanding the cause to the clerk of the Superior Court for further proceedings in partition, the defendants appealed.

*Parrish & Deal for plaintiff.*
*Benbow & Hall and Ingle & Rucker for defendants.*

DEVIN, J.   The original owner of the land described in the complaint
and the ancestor from whom the parties in interest claim descent, was
William T. Butler, Sr., who died testate in 1905, leaving him surviving
his widow, Theresa Butler; a daughter, Isabella Wyche; a son, William
T. Butler, Jr., and four grandchildren the issue of a deceased daughter.
The grandchildren, and the heirs of one of them who has died, are de-
fendants in this action, and the plaintiff claims under William T. But-
ler, Jr.

By the will of William T. Butler, Sr., he devised certain lands to his
said grandchildren, and one-half interest in certain other lands to his
daughter Isabella Wyche, and to Isabella Wyche, also, his home place,
with the following qualification: "And my daughter, Belle Wyche, shall
give to my wife, Teressa Butler, a home and support from all my land,
so long as she remains my widow and no longer."   To his son, William
T. Butler, Jr., who was then and continued to be a resident of the State
of California, he bequeathed one dollar.

Isabella Wyche died in 1906.   She had no children, and her will,
duly admitted to probate, is in the following words:

"I, Isabella B. Wyche, being of a sound mind, doth hereby make and
declare my last will and testament.   My husband, Robert P. Wyche,
shall have full and entire possession of all of my property including my
bank account with the First National Bank of Charlotte, North Caro-
lina, and also my account with the Loan and Savings Bank of Charlotte,
North Carolina.   All my money in the First National Bank of Char-
lotte, North Carolina, shall be devoted to keeping up the old homeplace
during the life of my stepmother.   After her death, the remainder of
the specified amount shall go to the support of the heirs according as
they may need and deserve it.   My money in the Savings Bank of Char-
lotte, N. C., I give and bequeath to my husband, Robert P. Wyche.   The
rents from my interest in tenement houses now in the possession of my
husband shall go also to keeping up the old homeplace during the life
of my stepmother, Theresa K. Butler.   And in case my husband die
before my stepmother, then all the property or money belonging to my
estate at the time of his death shall go to keep up the old homestead,
and then at the death of my stepmother all of the property shall go to
the legal heirs.   My husband shall be the counselor and adviser of my
stepmother in all her business affairs.   It is my desire, also, for him to
be the counselor and adviser of my nieces, Louella, Agnes, Grace, and
Melba Martin, concerning the property left for them by my father,
William T. Butler."

Theresa Butler, widow of William T. Butler, Sr., and stepmother of Isabella Wyche, died in 1926. William T. Butler, Jr., after instituting this proceeding for partition in 1930, died leaving a last will and testament in which he devised all his estate of every kind and wherever situated "including my interest in the estate of Isabella Wyche" to his wife, Laura Butler, who was substituted as party plaintiff, and on the death of Laura Butler, her daughter and only heir at law, Hannah Lee Bell Stephens, was substituted as party plaintiff. The issues submitted to the jury were addressed to the question of the identity of the plaintiff, and were answered in her favor. There were no exceptions to the charge of the court and there was competent evidence to support the verdict. It has therefore been established that the plaintiff is the successor in title to William T. Butler, Jr., who was the brother of Isabella Wyche.

Robert P. Wyche, the husband of Isabella Wyche, now eighty-five years of age, is still living, and has executed quit-claim deed for whatever interest he might have in the land to the defendants. Robert P. Wyche and the defendants have been in possession of the lands, receiving the rents therefrom, since the death of Isabella Wyche.

There was correspondence by letter between William T. Butler, Jr., and his nieces, the defendants, in 1928, 1929, and 1930, some of the letters containing references to the land and admissions of his interest therein. However, it was testified that the references in the letters to his interest in the land were due to erroneous advice as to the law.

It is apparent that the rights of the parties in the described lands are to be determined largely by the construction to be put upon the will of Isabella Wyche.

The provisions in the will of William T. Butler, Sr., for his widow, Theresa Butler, created an equitable charge upon the land in her favor, and the will of Isabella Wyche, to whom the land was devised subject to the charge for the purposes named, provided in her will for the continuation of this trust, and directed that the rents from the property should go to keeping up the home place during the life of her stepmother.

The defendants contend that the provision in the will of Isabella Wyche for her husband, Robert P. Wyche, should be construed to constitute a devise to him of the land in fee simple, in accord with the rule prescribed by C. S., 4162.

The pertinent portions of the will relating to him are as follows:

"My husband, Robert P. Wyche, shall have full and entire possession of all my property including bank account with the First National Bank of Charlotte. All my money in the First National Bank of Charlotte shall be devoted to keeping up homeplace during life of my stepmother. After her death, the remainder shall go to the support of the heirs

according as they may need and deserve it. The rents from my interest in tenement houses now in possession of my husband shall also go to keeping up old homeplace during life of my stepmother. And in case my husband die before my stepmother, then all the property or money belonging to my estate at time of his death shall go to keep up old homestead, and then at death of my stepmother all the property shall go to the legal heirs."

The rule that, when real estate shall be devised to any person, the same shall be construed to be a devise in fee simple is inapplicable here as the words used in the will of the testatrix negative the idea of the investiture of title in fee, or for life, or the granting of any other beneficial interest in the real property to Robert P. Wyche, and express the intent, rather, to impose upon her husband duties as executor and trustee of an active trust, with directions as to the use of the property real and personal, and as to how the income shall be applied during his life and after his death, in case he should die before her stepmother.

It seems that one of the principal objects she had in view at the time of making her will was to carry out the wishes of her father for the care of his widow, her stepmother, and the possession of her real property in the hands of her husband was definitely limited to this specific purpose. The bequest of personal property to him was couched in different language. As to that, she said: "My money in the Savings Bank of Charlotte I give and bequeath to my husband, Robert P. Wyche." While the testatrix does not use the word trust or trustee, it is well settled that no particular language is required to create a trust relationship if the intent to do so is evident. If it appears that the intention is that the property be held or dealt with for the benefit of another, a court of equity will affix to it the character of trust. *Waldroop v. Waldroop,* 179 N. C., 674; *Benevolent Society v. Orrell,* 195 N. C., 405.

It is true it has been uniformly held since the passage, in 1784, of the act, now codified as C. S. 4162, that an unrestricted devise of real estate passes the fee (*Bell v. Gillam,* 200 N. C., 411; *Barbee v. Thompson,* 194 N. C., 411; *Roane v. Robinson,* 189 N. C., 628), but the construction required by this statute may not be invoked where no such estate is attempted to be devised and where the plain intent is not to grant an estate but to impose a trust and direct the collection of rent for application to a specific purpose. *Young v. Young,* 68 N. C., 309; *Witherington v. Herring,* 140 N. C., 495; *Fellowes v. Durfey,* 163 N. C., 305.

If an instrument is expressly and exclusively intended to create a trust, it confers upon the trustee no beneficial interest, and after a trust has terminated, the trustee cannot claim to be the beneficial owner of the property held in trust unless it clearly appears to have been the intention of the donor. 65 C. J., 527; *Newton v. Hunt,* 134 App. Div. (N. Y.), 325; 201 N. Y., 599.

The contention that plaintiff's right has been barred by the adverse possession of the defendants for more than twenty years cannot be sustained. While twenty years adverse possession by one tenant in common will ordinarily toll the entry of his cotenant (*Alexander v. Cedar Works,* 177 N. C., 137; *Lester v. Harward,* 173 N. C., 83), this rule may not be held applicable to the uncontroverted facts here.

It is elementary that the possession of one tenant in common is for the benefit of all. Tenants in common are placed in confidential relation to each other by operation of law as to the joint property, and the possession of one is in law the possession of all, until there has been an ouster. *Bailey v. Howell,* 209 N. C., 712; *Conkey v. Lumber Co.,* 126 N. C., 499.

To constitute adverse possession sufficient to oust the rightful owner, the possession must be accompanied by acts evincing an intent to hold solely for the possessor, to the exclusion of and in opposition to the claims of all others, and must afford unequivocal indication that he is exercising the dominion of sole owner. *Locklear v. Savage,* 159 N. C., 236; *Shermer v. Dobbins,* 176 N. C., 547.

The evidence offered here fails to measure up to this requirement. The possession was not adverse to the plaintiff. On the contrary, the evidence indicates it was in recognition of plaintiff's rights.

Furthermore, the fact that it is provided in the will of William Butler, Sr., that Isabella Wyche should give her stepmother a home and support from the land so long as she remains a widow, and the additional provision in the will of Isabella Wyche for the stepmother that the rents from her property should go to keeping up the old homeplace during the life of her stepmother, lend support to the view that as long as Theresa Butler lived there was no right to the possession of the lands upon which to base an action for recovery of the land, and that such an action would have constituted an infringement on the possession of the trustee who was holding for the purpose of carrying out the directions of the will. *Joyner v. Futrell,* 136 N. C., 301; *Woodlief v. Wester,* 136 N. C., 162; *Cole v. Bank,* 186 N. C., 514; *Chinnis v. Cobb,* 210 N. C., 104.

It is evident from consideration of the entire will that the intention of the testatrix, to be gathered from the language used, was that the ultimate takers of the property should be "the heirs" or "the legal heirs."

It is provided that after the death of her stepmother "all of the property shall go to the legal heirs."

This calls for the application of the rule of construction that the words "the heirs" or "the legal heirs" are to be given their legal significance, rather than to be understood as the expression of a supposed intention to limit the class denoted thereby to particular persons.

As was so well said by *Stacy, J.,* in *Witty v. Witty,* 184 N. C., 375: "The words (lawful heirs) have a well defined meaning. Their significance is fixed by law, and when they are used in a deed or will without any superadded words or phrases, indicating a different meaning, they are to be understood as having been used in their ordinary sense, and according to their legal acceptation." *Rives v. Frizzle,* 43 N. C., 237; *Jenkins v. Lambeth,* 172 N. C., 466.

The words used have a definite legal meaning. *Stith v. Barnes,* 4 N. C., 96.

"The word (heir) has a technical signification, and, when unexplained and uncontrolled by the context, must be interpreted according to its technical sense, or its strict legal import." 29 C. J., 293.

This is a rule of interpretation adopted and followed by the courts with practical unanimity. *Jenkins v. Lambeth, supra.*

Under this general rule, in the absence of a contrary intention clearly expressed in the will or to be derived from its context, an estate devised to a class described as heirs or legal heirs would pass to those who would take under the canons of descent, either in right or in possession, at the death of the testator, at which time the members of the class are to be ascertained and determined. *Witty v. Witty, supra.*

So, in the case at bar, those who could take under the phrase "the legal heirs" at her death, embraced all whom the law includes in that class, and the words cannot be construed to exclude the brother under whom plaintiff claims, in favor of the defendants, her nieces. *Grantham v. Jinnette,* 177 N. C., 229.

There was no error in the exclusion of the parol evidence offered to show that the persons intended to be included under the designation, "the legal heirs," were limited to the defendants. *Grantham v. Jinnette, supra.*

The intent of the testator is to be ascertained from the consideration of the words in which the will is expressed, and parol evidence may not be adduced to contradict, add to, or explain its contents. *Holt v. Holt,* 114 N. C., 241; *McIver v. McKinney,* 184 N. C., 393; *Jolley v. Humphries,* 204 N. C., 672. There is no ambiguity. The devise is to a class, "the legal heirs"; who they are is a matter of law. Who are the heirs after the identity of the person is established is not a question for the jury but a matter for the court. *Blacknall v. Wyche,* 23 N. C., 94; *Bradford v. Erwin,* 34 N. C., 291; *Morrison v. McLauchlin,* 88 N. C., 251; *Wooten v. Hobbs,* 170 N. C., 211; 94 A. L. R., 35; *Kidder v. Bailey,* 187 N. C., 505.

After a consideration of all the assignments of error pressed on the argument and by brief, we conclude that they cannot be sustained, and in the rulings of the court below we find

No error.