LYLE W. CASSADA, PLAINTIFF v. CECIL CASSADA AND WIFE, PAULINE CASSADA, AND DAVID STRATTON AND WIFE, DARLENE STRATTON, DEFENDANTS

No. 9028SC589

(Filed 4 June 1991)

**Adverse Possession § 36 (NCI4th)— adverse possession by decedent—intervening life tenant—twenty-year period not met**

The trial court, in an action to establish a boundary, erroneously granted summary judgment for defendants and the case was remanded for entry of summary judgment for plaintiff where the disputed boundary arose from a will which left a life tenancy to the testator's wife, with the remainder to his children; and the children executed deeds of partition after the death of the testator and before the death of the wife. The testator's intent as gathered from the four corners of the will indicates that his children would only have a present possessory interest either upon the death of the mother/life tenant or some other act by the trustee which would terminate the trust. There is no record evidence that the trust has been terminated other than by the death of the mother/life tenant on 18 August 1973 and there is no reason to infer that her assent to partitioning the property should be equated with assent to terminating the trust. The remaindermen's possession of the property was not adverse in that it was with

the acquiescence and permission of their mother, the life tenant, and the twenty-year period for adverse possession was not met.

**Am Jur 2d, Adverse Possession §§ 15, 203, 253.**

APPEAL by plaintiff from judgment entered 25 April 1990 by *Judge Robert D. Lewis* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 5 December 1990.

This is an action to determine the boundary line between adjoining tracts of property owned by plaintiff Lyle Cassada and defendant Pauline Cassada and ownership of approximately six acres of land currently enclosed in a fence on Pauline Cassada's tract of land. Plaintiff instituted this action on 8 February 1989 claiming title to the disputed land by virtue of a deed recorded in Deed Book 754 at page 172 in the Buncombe County Registry. In their answer, defendants claim ownership of the disputed land by adverse possession of the disputed tract for more than twenty years and request that title to the property be quieted and that they be declared lawful owners of the disputed tract.

Plaintiff Lyle Cassada, defendant Cecil Cassada and Willard Cassada were the three youngest sons of W. J. Cassada and Lucinda Cassada. Following W. J. Cassada's death in 1945 and a will caveat proceeding and subsequent appeals, a consent judgment was entered which provided that plaintiff Lyle Cassada, defendant Cecil Cassada, Willard Cassada, and their mother, Lucinda Cassada, together owned a two-thirds interest in the lands of W. J. Cassada "under and by virtue of the provisions of the Last Will and Testament of W. J. Cassada."

W. J. Cassada's will provided, in pertinent part, that:

Item 2. All of the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath absolutely and in fee simple unto my son, Willard Cassada, in trust, however, for the following uses and purposes, to-wit:

(a) My wife, Lucinda Cassada, shall have the possession, use and enjoyment of my home and farm, together with all of my household and kitchen furniture, live stock, farming implements and all of my personal property, so long as she may live and remain my widow, to be the home of herself and of our three youngest sons, Willard, Cecil, and Lyle, and to

CASSADA v. CASSADA

[103 N.C. App. 129 (1991)]

be used and enjoyed by her and them in common; this to be in lieu of dower, year's support, or any other allowance which she or they might claim and subject, also, to sale and conveyance of any part of said property as hereinafter provided.

(b) Upon the death of my said wife and the payment of all of her debts and funeral expenses, or upon her marriage, all of my said property, real, personal and mixed, shall be and become the property of my said three sons, Willard, Cecil, and Lyle, to be theirs absolutely, subject only to the following, to-wit:

. . . .

Item 3. I authorize and empower my executor and trustee hereinafter named, or the executor and trustee for the time being hereunder, to sell at public or private sale any portion of my estate which he may hold in trust whenever in his judgment such sale shall become necessary in order to carry out the purposes herein expressed or shall be deemed for the best interests of my estate, and to make good and sufficient deeds or other instruments of transfer therefor, provided that proceeds of all such sales shall be held and used for the purposes herein mentioned and subject to the trust herein created, and provided also, that the purchasers of any of said property shall not be required to see to the application of the purchase price thereof.

W. J. Cassada appointed his son, Willard Cassada, as the "Lawful Executor and Trustee to all intents and purposes, to take and hold all of my estate for the uses and purposes herein set forth, and to execute this my Last Will and Testament according to the true intent and meaning of the same and of each and every part and clause thereof."

The following pertinent facts have been stipulated to by the parties: In July of 1954, the three brothers had the property surveyed and along with their spouses executed deeds of partition among themselves with Willard receiving Tract 1; Cecil receiving Tracts 2 and 2A; and Lyle receiving Tract 3. Neither Lucinda Cassada nor Willard Cassada (as disclosed by the record evidence) in his official capacity as trustee under the will joined in the execution of the deeds. However, the parties stipulated that they partitioned the property "with the knowledge of" Lucinda Cassada. Lucinda

CASSADA v. CASSADA

[103 N.C. App. 129 (1991)]

Cassada died on 18 August 1973. At some point in 1954 or 1955, after the exchange of deeds of partition, Cecil Cassada erected a fence to separate his property from Lyle Cassada's property. The fence did not follow the property lines set out in the survey which was used to partition the property and as a result included the disputed property.

In 1985, Cecil Cassada conveyed the property to his wife, Pauline. In 1988 Pauline Cassada employed a surveyor to survey the land and discovered the discrepancy in the property lines. In 1983 Cecil and Pauline Cassada had conveyed a portion of the disputed property to Lyle Cassada's daughter and son-in-law, Darlene and David Stratton.

After the discrepancy between the property line and Cecil's fence was discovered in 1988, plaintiff instituted this suit to establish the boundary. Each party subsequently moved for summary judgment. The trial court denied plaintiff's motion and entered summary judgment in favor of defendant. Plaintiff appeals.

*Leonard, Biggers & Knight, P.A., by William T. Biggers and T. Karlton Knight, for plaintiff-appellant.*

*Shuford, Best, Rowe, Brondyke & Wolcott, by Patricia L. Arcuri and James Gary Rowe, for defendant-appellees.*

EAGLES, Judge.

Plaintiff assigns as error the trial court's determination that Pauline Cassada was the owner of the subject property by adverse possession. Plaintiff contends that the "claim of Defendants to the disputed land must fail for the following reasons: (1) The possession of the land by the defendants has not been adverse to all persons as required by statute and as expressed in *Locklear v. Savage*, [159 N.C. 236, 74 S.E. 347 (1912)]. . . . (2) By the execution and delivery of a warranty deed to Lyle Cassada, Cecil and Pauline Cassada are estopped from claiming the disputed lands as their own. . . . (3) The possession of the disputed land by Cecil Cassada was not notorious. . . . (4) There can be no dissesin [sic] of one whose right to possession is a future right." Plaintiff contends that the facts presented in the record as a matter of law do not entitle defendants to summary judgment. We agree.

At the outset we note that the interest of each party in the land in question derived from the Last Will and Testament of W. J. Cassada.

It is the duty of the Court to construe the provisions in a will so as to discover the intent of the testator and to give effect to it if it is not in contravention of some established rule of law or public policy. Such intention is to be determined by an examination of the will, in its entirety, and in light of all surrounding facts and circumstances known to testator.

Where there is ambiguity or uncertainty the Court is to take into consideration the established rules for construction of a will. Effect must be given to each clause, phrase and word, if a reasonable construction of the will so permits. Each string should give its sound.

The intent of the testator is determined from the entire instrument so as to harmonize, if possible, provisions which would otherwise be inconsistent. A phrase should not be given a significance which clearly conflicts with the evident intent of the testator as gathered from the four corners of the will and the Court will adopt that construction which will uphold the will in all its parts if such course is consistent with established rules of law and the intention of the testator. However, where provisions are irreconcilably in conflict, then the last expression of intent will ordinarily prevail. Apparent conflicts will be reconciled, if possible to do so consistent with testator's intent, and irreconcilable provisions will be resolved by giving effect to the general prevailing purpose of the testator.

*Joyner v. Duncan*, 299 N.C. 565, 576-77, 264 S.E.2d 76, 86 (1980). (Citations omitted.)

"When real estate shall be devised to any person, the same shall be held and construed to be a devise in fee simple, unless such devise shall, in plain and express words, show, or it shall be plainly intended by the will, or some part thereof, that the testator intended to convey an estate of less dignity." G.S. 31-38. The rule that a "devise of the 'use of' property is the equivalent of a devise in fee . . . has no application, however, when the will shows an intent to pass an interest that is less than a fee." *Thompson v. Ward*, 36 N.C. App. 593, 596, 244 S.E.2d 485, 487 (1978).

CASSADA v. CASSADA

[103 N.C. App. 129 (1991)]

In *Stephens v. Clark*, 211 N.C. 84, 189 S.E. 191 (1937), testatrix, who died in 1906 with no children, made the following provisions in her Last Will and Testament:

"My husband, Robert P. Wyche, shall have full and entire possession of all of my property including my bank account with the First National Bank of Charlotte, North Carolina, and also my account with the Loan and Savings Bank of Charlotte, North Carolina. All my money in the First National Bank of Charlotte, North Carolina, shall be devoted to keeping up the old homeplace during the life of my stepmother. After her death, the remainder of the specified amount shall go to the support of the heirs according as they may need and deserve it. My money in the Savings Bank of Charlotte, N.C., I give and bequeath to my husband, Robert P. Wyche. The rents from my interest in tenement houses now in the possession of my husband shall go also to keeping up the old homeplace during the life of my stepmother, Theresa K. Butler. And in case my husband die before my stepmother, then all the property or money belonging to my estate at the time of his death shall go to keep up the old homestead, and then at the death of my stepmother all of the property shall go to the legal heirs."

*Id.* at 86, 189 S.E. at 193. The *Stephens* court, in addressing the rights of the parties to the testatrix's property, stated that

[t]he rule that, when real estate shall be devised to any person, the same shall be construed to be a devisee in fee simple is inapplicable here as the words used in the will of the testatrix negative the idea of the investiture of title in fee, or for life, or the granting of any other beneficial interest in the real property to Robert P. Wyche, and express the intent, rather, to impose upon her husband duties as executor and trustee of an active trust, with directions as to the use of the property real and personal, and as to how the income shall be applied during his life and after his death, in case he should die before her stepmother.

*Id.* at 88, 189 S.E. at 194. In *Stephens*, the court stated that as long as the stepmother lived, "there was no right to the possession of the lands upon which to base an action for recovery of the land, and that such an action would have constituted an infringement on the possession of the trustee who was holding for the

purpose of carrying out the directions of the will." *Id.* at 89, 189 S.E. at 195.

Here, the testator conveyed all of his estate, real, personal and mixed in trust to his son Willard Cassada. Pursuant to the express terms of the will, the testator's wife, Lucinda Cassada, had the "possession, use and enjoyment of my home and farm, together with all of my household and kitchen furniture, live stock, farming implements and all of my personal property, so long as she may live and remain my widow, to be the home of herself and of our three youngest sons, Willard, Cecil, and Lyle, and to be used and enjoyed by her and them in common[.]" While the testator provided that the property was to be used and enjoyed by his widow and minor sons in common, the testator's intent as gathered from the four corners of the will was to convey to his wife a present possessory interest in a life estate with the remainder upon her death passing to his three minor sons. This conclusion is bolstered by the succeeding paragraph which provides that upon the death of Lucinda Cassada, "all of my said property, real, personal and mixed, shall be and become the property of my said three sons, Willard, Cecil, and Lyle, to be theirs absolutely[.]" The testator's intent as gathered from the four corners of the will indicates that his children would only have a present possessory interest either upon the death of the mother/life tenant or some other act by the trustee which would terminate the trust. While the testator's conveyance of his property in trust obviously indicates his concern that his three minor children would be provided for during their minority, it is equally obvious that the testator intended to leave his wife a life estate and not a tenancy in common with their three minor children.

> No action for the recovery or possession of real property, or the issues and profits thereof, shall be maintained when the person in possession thereof, or defendant in the action, or those under whom he claims, has possessed the property under known and visible lines and boundaries adversely to all other persons for 20 years; and such possession so held gives a title in fee to the possessor, in such property, against all persons not under disability.

G.S. 1-40.

CASSADA v. CASSADA

[103 N.C. App. 129 (1991)]

"Every possession of land will not ripen into title. Each one of the following elements must be proved by a claimant in order for him to obtain title by adverse possession.

There must be an *actual possession* of the real property claimed; the possession must be *hostile* to the true owner; the claimant's possession must be *exclusive*; the possession must be *open and notorious*; the possession must be *continuous and uninterrupted for the statutory period*; and the possession must be with *an intent to claim title to the land occupied*." Webster Real Estate Law in North Carolina § 258, p. 319.

*Mizzell v. Ewell*, 27 N.C. App. 507, 510, 219 S.E.2d 513, 515 (1975). "[I]f the plaintiff entered into possession with the permission of the owner, such possession would not be adverse unless and until the plaintiff disclaimed such arrangement and made the owner aware of such disclaimer or disclaimed the arrangement in such manner as to put the owner on notice that the plaintiff was no longer using the land by permission but was claiming it as absolute owner." *Wilson Board of Education v. Lamm*, 276 N.C. 487, 491, 173 S.E.2d 281, 284 (1970).

"It is a well established rule that possession of real property cannot be adverse to remaindermen until the death of the life tenant, even though during the lifetime of the life tenant he gave a deed purporting to convey a fee." *Stone v. Conder*, 46 N.C. App. 190, 199, 264 S.E.2d 760, 765, *disc. rev. denied*, 301 N.C. 105 (1980). *See also* P. Hetrick, Webster's Real Estate Law in North Carolina § 302 (rev. ed. 1988).

Here in order to establish adverse possession of the disputed tract, one of several contingencies must have occurred. Either, under the express terms of the will, the life tenant must have died thereby terminating the trust and making the remaindermen's interest a present possessory interest and then the requisite elements for adverse possession must have been met after her death; or, the trust must have been terminated through some other means than the life tenant's death and the property adversely possessed as against those having an interest in the property upon the trust's termination.

First, with respect to whether the remaindermen had adversely possessed the property against the life tenant by taking possession of the property after partitioning it, we hold that the

CASSADA v. CASSADA

[103 N.C. App. 129 (1991)]

remaindermen have not met the requisite requirements for adverse possession. Their possession of the property was not adverse in that it was with the acquiescence and permission of their mother, the life tenant. Here the parties stipulated that the property was partitioned "with the knowledge of" Lucinda Cassada. Secondly, there is no record evidence that the trust had been terminated. Where the parties have stipulated in the record that the property was divided with the permission of their mother, the life tenant, there is no reason to infer that her assent to partitioning the property should be equated with assent to terminating the trust. Even though a trust may be voluntarily terminated by act or agreement of all the beneficiaries, *see Fisher v. Ladd*, 47 N.C. App. 587, 268 S.E.2d 20 (1980), we hold on this record that the life tenant's assent to the partitioning of the property alone is not sufficient to terminate the trust. We note that pursuant to the express terms of the will, the trust would have been terminated by the death of the mother/life tenant. She died on 18 August 1973. We find no other record evidence of the trust being terminated. Accordingly, since this action was instituted on 8 February 1989, the twenty year statutory period had not been met by adverse possession following the death of the life tenant, or by adverse possession following other termination of the trust or by adverse possession during the life of the life tenant. Since the twenty year statutory period did not begin to run on these facts until the death of the life tenant, we find it unnecessary to address whether the other requisite elements for adverse possession have been met.

We hold that the trial court erroneously entered summary judgment in favor of defendants and this cause is remanded for entry of summary judgment in favor of plaintiff.

Reversed and remanded.

Judges ARNOLD and PARKER concur.