GARLAND L. STONE, ROBERT O. STONE, RAYMOND L. STONE, WILLIAM M. STONE, ALBERT ARCHIE STONE, MARGIE ANN BRYANT AND MARY FRANCES WINEBERGER v. Y. MACK CONDER AND ROSALIE W. CONDER, WAYNE S. PHILLIPS AND WIFE, NADINE C. PHILLIPS, JIMMY LOVE, TRUSTEE, SANFORD SAVINGS & LOAN ASSOCIATION, WILLIAM H. WOODY AND WIFE, GISELA S. WOODY, W. W. SEYMOUR, TRUSTEE, FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SANFORD, J. ALLEN HARRINGTON, TRUSTEE, THE CAROLINA BANK, HEINS TELEPHONE COMPANY, CAROLINA POWER & LIGHT COMPANY AND CITY OF SANFORD

No. 7911SC744

(Filed 15 April 1980)

**Adverse Possession § 25.1— life tenant's sale of land—sufficiency of evidence of adverse possession**

Defendants offered sufficient evidence of adverse possession for seven years under color of title to defeat plaintiff's title where the evidence tended to show that the plaintiffs' father had a life interest in the property in question and plaintiffs were the remaindermen; the life tenant died in 1958 but the youngest remainderman did not reach majority until 1964; the life tenant had conveyed what purported to be a fee simple title to the property in 1950; for the next 26 years the purchasers replanted the entire tract with pine saplings, listed the property in their names, paid all taxes assessed against it, stocked it with quail, hunted on it, cut firewood from it, and planted a garden on it near the public road; in 1976 the purchasers sold it to defendant developers and home builders who had the property resurveyed; the boundary lines were well defined by clear and visible marks customarily used by surveyors and had been in place for many years; the developers listed the property in their name and paid all taxes on it; the developers subdivided the land, created public streets, caused water and electrical and telephone lines to be located throughout the development, and sold various lots in the development; and plaintiffs' occasional going onto the property to cut a Christmas tree or rake pinestraw did not interrupt the continued adverse possession by defendants and their predecessors in title. G.S. 1-42; G.S. 1-39; G.S. 1-38(b) and (c).

APPEAL by plaintiff from *Preston, Judge.* Judgment entered 17 May 1979 in Superior Court, LEE County. Heard in the Court of Appeals 28 February 1980.

This is an action brought by plaintiffs seeking an order ejecting defendants from property allegedly owned by plaintiffs, requesting that an order issue canceling deeds of trust alleged to be clouds of title on the plaintiffs' property, and requesting an order that plaintiffs be declared the owners in fee simple of the subject property. On motion for summary judgment and by consent of the

parties, the court reviewed the file, heard evidence orally and by affidavits, examined exhibits, heard arguments of counsel, set forth uncontradicted facts, made conclusions of law and entered judgment dismissing the action as follows:

. . . .

2. The plaintiffs are the children of William Warren Stone, deceased, and by this action claim a remainder interest in Royal Pines Estates allotted to their father in the division of the lands of their grandfather, Neil A. Stone.

3. The will of Neil A. Stone probated in Lee County on January 12, 1938 provided for a life estate in his property to his wife, Nannie Catharine Stone and among other provisions contained the following devise:

'I give, devise and bequeath to my son William Warren Stone, to take effect after the death of my said wife, one-tenth in value of all of my real estate to have and to hold the same during his natural life and after his death the same to be equally divided among his heirs at law.'

4. On July 25, 1948, after the death of Nannie Catharine Stone, the children of Neil A. Stone petitioned the Clerk of the Superior Court of Lee County for an actual partition of the real property of Neil A. Stone and under that special proceeding commissioners were appointed, a surveyor employed, and the property physically divided and allotted in accordance with a survey and plat by the surveyor. A copy of that plat has been on file in the office of the Register of Deeds of Lee County since August 18, 1949 (Womble Exhibit B). The parcel presently known as Royal Pines Estates was designated as Lot No. 7 in the partition and was allotted to William Warren Stone by metes and bounds description which corresponds with and refers to the recorded partition plat.

5. By warranty deed recorded in Lee County Registry on June 4, 1950, William Warren Stone and wife conveyed what purported to be a fee simple title to Royal Pines Estate by the sames metes and bounds description to W. J. Womble and wife, Emily G. Womble. At the time of the purchase the seller showed Mr. Womble the boundary lines and corners of

the property which he recalls were well marked by iron stakes extending at least 18 inches above the ground and by trees corresponding to those shown on the recorded plat.

6. William Warren Stone died on August 8, 1958. At the time of their father's death, all of the plaintiffs were of age except Raymond L. Stone, born November 6, 1937, Mary Frances Stone Wineberger, born June 20, 1939, and Margie Ann Stone Bryant, born October 8, 1943. None of the plaintiffs have been under any legal disability for more than three years next preceding the commencement of this action.

7. At the time the Wombles purchased the subject property all merchantable timber had been cut. The Wombles systematically replanted the entire property with pine saplings, including the portion previously under cultivation. Twenty six years later the saplings had matured and the developer of the property named it 'Royal Pines Estates.' From the date of their purchase, the Wombles listed the property in their names and paid all ad valorem taxes assessed against it. Mr. Womble stocked the property with quail and regularly hunted it with his dogs. He cut firewood from the property for personal use and each year planted and harvested a garden in an open plot near the public road. After he acquired a nearby farm in 1966 he seeded the garden plot in pines, but continued to go upon the property frequently to protect it against encroachments or trespass by others.

8. In 1950 the public road on which the property fronted was unpaved. There was no public water or sewer systems and only a few houses in the area. During the ensuing twenty six years the surrounding areas were developed for residential purposes and the Wombles turned down the offers of a number of would-be purchasers, it being the intention of the Wombles to hold the property for investment and a possible site for the construction of a new house for their own use.

9. By warranty deed recorded September 21, 1976 the Wombles conveyed the subject property to defendants Y. Mack Conder and wife, Rosalie W. Conder, by the same metes and bounds description and map reference under which the property was conveyed to them. Mr. Conder had

been engaged in land development and home construction for many years in Lee County and purchased the property for that purpose. Within a few days after they purchased the property the Conders had it re-surveyed by a local engineering firm. Prior to commencing the re-survey, Robert J. Bracken, the engineer in charge of that work, compared the descriptions in the recorded deeds by which the property had been conveyed to the Wombles and by them to the Conders and determined that they were identical and corresponded in all respects with the 1949 partition survey and recorded plat of the property. During the course of such re-survey, the surveying party located the original corners and boundaries of the property on the ground and found that they conformed to those shown by the previously recorded plat. Mr. Bracken noted that the boundary lines were well defined by clear and visible marks customarily used by surveyors and had been in place for many years. After completing the survey of the other boundaries, the property was subdivided into residential lots and streets and a copy of the subdivision plat submitted to the Sanford Planning Board and other involved agencies for approval. After public hearing and several interior revisions, the subdivision was approved and the revised plat recorded in Lee County Registry on December 14, 1977 (Conder Exhibit B).

10. From the time of their purchase in 1976, the Conders listed the property for taxes in their names and paid all taxes subsequently assessed against it. They encumbered the property by deed of trust to The Carolina Bank which is still outstanding. They cut, paved, and dedicated public streets through the property. They subdivided and staked out by visible markers on the ground some seventeen residential lots within its boundaries. They granted easements and caused water, electrical and telephone lines to be located throughout the development and caused the same to be incorporated within the city limits of Sanford. They sold residential lot 12 to defendants William H. Woody and wife, and lot 14 to defendants Wayne S. Phillips and wife. Both buyers borrowed money from local savings and loan associations to construct new homes and recorded their deeds of trust on the lots early in 1978. The Phillipses completed and moved in-

to their house prior to the commencement of this action. The Woodys were in the process of building when they were served with the complaint.

11. Prior to the commencement of this action neither the plaintiffs nor anyone in their behalf had ever made their claim to the subject property known to the defendants or objected to its use and occupancy by the defendants and their predecessors in title.

The Court is of the opinion that there is no genuine issue as to any material fact between the parties, and that the defendants are entitled to judgment against the plaintiffs as a matter of law. The affidavits of plaintiff Garland Stone, and his three relatives, that they had never seen anyone cutting timber or planting and harvesting crops on the property, begs the question and does not rebut the prima facie evidence of defendants' possession of the entire property under known and visible lines and boundaries created by NCGS 1-38(b) in light of the undisputed evidence offered by the defendants. Nor does the occasional going on the property to cut a Christmas tree or rake pine straw for his dog house by plaintiff Garland Stone without defendants' knowledge constitute an interruption of defendants' possession or triable issue of fact in that regard. Defendants and their predecessors in title with whom they were in privity, have held and been in possession of the subject property openly and adversely under color and claim of title in their own right for more than twenty years next preceding the commencement of this action. The plaintiffs do not allege and have not offered evidence that they have been in possession of the property within twenty years before commencement of this action. The plaintiffs cannot now for the first time assert rights which they have allowed to lapse by passage of time.

It is, therefore, ORDERED, ADJUDGED AND DECREED:

1. The Motion for Summary Judgment by the within named defendants is allowed and the action of the plaintiffs with reference to these defendants is dismissed.

Thereafter, dismissal of the action was made as to the defendants, Heins Telephone Company, Carolina Power & Light

Company, and the City of Sanford, all of which had acquired easements for utilities in the property which is the subject of the controversy.

Plaintiffs appealed.

*Grover C. McCain, Jr. and Robert B. Jervis for plaintiff appellants.*

*George M. McDermott and J. W. Hoyle for defendant appellees.*

HILL, Judge.

Counsel have stipulated that the applicability of the Rule in Shelley's case shall not be presented to the Court at this time. Therefore, we do not discuss that issue.

One question is presented for our consideration. Did the trial court err in granting summary judgment for the defendants on the ground that the plaintiff's action was barred?

We note the trial judge made it clear that in summarizing the facts that he was not making findings of fact but merely reciting those material facts which he considered uncontroverted. In determining a motion for summary judgment, "the trial judge is not required to make finding of fact and conclusions of law and when he does make same, they are disregarded on appeal." Shuford N. C. Practice and Procedure § 56-6 (1979 Supp.); *see Lee v. King,* 23 N.C. App. 640, 643, 209 S.E. 2d 831, *cert. denied* 286 N.C. 336 (1974). Rule 52(a)(2) does not apply to the decision on a summary judgment motion because, if findings of fact are necessary to resolve an issue, summary judgment is improper. "However, such findings and conclusions do not render a summary judgment void or voidable and may be helpful, if the facts are not at issue and support the judgment." (Citations omitted.) *Mosely v. Finance Co.,* 36 N.C. App. 109, 111, 243 S.E. 2d 145, *Disc. rev. denied* 295 N.C. 467 (1978).

Plaintiffs are the grandchildren of Neil A. Stone and the children of William Warren Stone. They claim title to the lands as vested remaindermen under the will of Neil A. Stone. It must be noted that plaintiff's action was brought over 20 years after the death of the life tenant and over 14 years after the youngest child of William Warren Stone became an adult.

Plaintiffs contend the record title vests them with the legal title and cite as authority G.S. 1-42, which reads as follows:

> In every action for the recovery or possession of real property, or damages for a trespass on such possession, the person establishing a legal title to the premises is presumed to have been possessed thereof within the time required by law; and the occupation of such premises by any other person is deemed to have been under, and in subordination to, the legal title, unless it appears that the premises have been held and possessed adversely to the legal title for the time prescribed by law before the commencement of the action. Provided that a record chain of title to the premises for a period of thirty years next preceding the commencement of the action, together with the identification of the lands described therein, shall be prima facie evidence of possession thereof within the time required by law.

Defendants contend that G.S. 1-39, readings as follows, applies:

> SEIZING WITHIN TWENTY YEARS NECESSARY.—No action for the recovery of possession of real property shall be maintained, unless it appears that the plaintiff, or those under whom he claims, was seized or possessed of the premises in question within twenty years before the commencement of the action, unless he was under the disabilities prescribed by law.

In fact, both statutes must be read together. *Williams v. Board of Education*, 266 N.C. 761, 767, 147 S.E. 2d 381 (1966).

> [I]t is not necessary that a plaintiff in action to recover land should allege in his complaint that he had possession within twenty years before action brought. For if he establishes on the trial a legal title to the premises, he will be presumed to have been possessed thereof within the time required by law, unless it is made to appear that such premises have been held and possessed adversely to such legal title for the time prescribed by law before the commencement of such action.

*Johnston v. Pate*, 83 N.C. 110, 112 (1879). In the case *sub judice* the burden, therefore, is on the defendants to show superior title by virtue of adverse possession.

Plaintiff contends the defendants have not established sufficient evidence of adverse possession to defeat plaintiff's title. In the case of *Mizzell v. Ewell,* 27 N.C. App. 507, 510, 219 S.E. 2d 513, 515 (1975), Judge Arnold, quoting from Webster, Real Estate Law in North Carolina, § 258, p. 319, states that:

> There must be an *actual possession* of the real property claimed; the possession must be *hostile* to the true owner; the claimant's possession must be *exclusive;* the possession must be *open* and *notorious;* the possession must be continuous and *uninterrupted* for the statutory period; and the possession must be with *an intent to claim title to the land occupied.*

Defendants contend their evidence established all of the elements required to prove adverse possession and, in addition, rely on G.S. 1-38(b) and (c), which read as follows:

(b) If

> (1) The marking of boundaries on the property by distinctive markings on trees or by the implacement of visible metal or concrete boundary markers in the boundary lines surrounding the property, such markings to be visible to a height of 18 inches above the ground, and

> (2) The recording of a map prepared from an actual survey by a surveyor registered under the laws of North Carolina, in the book of maps in the office of the register of deeds in the county where the real property is located, with a certificate attached to said map by which the surveyor certifies that the boundaries as shown by the map are those described in the deed or other title instrument or proceeding from which the survey was made, the surveyor's certificate reciting the book and page or file number of the deed, other title instrument or proceeding from which the survey was made,

*then the listing and paying of taxes on the real property marked and for which a survey and map have been certified and recorded as provided in subdivisions (1) and (2) above shall constitute prima facie evidence of possession of real*

*property* under known and visible lines and boundaries. Maps recorded prior to October 1, 1973 may be qualified under this statute by the recording of certificates prepared in accordance with subdivision (b)(2) above. Such certificates must contain the book and page number where the map is filed, in addition to the information required by subdivision (b)(2) above, and shall be recorded and indexed in the deed books. When a certificate is filed to qualify such a recorded map, the register of deeds shall make a marginal notation on the map in the following form: 'Certificate filed pursuant to G.S. 1-38(b), book . . . . . . . (enter book where filed), page . . . . .' (Emphasis added.)

(c) Maps recorded prior to October 1, 1973 shall qualify as if they had been certified as herein provided if said maps can be proven to conform to the boundary lines on the ground and to conform to instruments of record conveying the land which is the subject matter of the map, to the person whose name is indicated on said recorded map as the owner thereof. Maps recorded after October 1, 1973 shall comply with the provisions for a certificate as hereinbefore set forth.

"The only rule of general applicability is that the acts relied upon to establish [adverse] possession must always be as distinct as the character of the land reasonably admits of and be exercised with sufficient continuity to acquaint the true owner with the fact that a claim of ownership, in denial of his title is being asserted." *Alexander v. Cedar Works*, 177 N.C. 137, 144-45, 98 S.E. 312 (1919). Defendants rely on the actions set forth in the trial judge's findings of uncontroverted fact numbers 5, 7, 9 and 10 to establish their adverse possession.

The plaintiffs, in opposition to defendants' evidence, offered the affidavits of James A. Stone, Garland L. Stone, Jesse James Stone, and Willie Frank Jones, all kinsmen or heirs at law of Neil A. Stone. Garland L. Stone cut Christmas trees on nine occasions and gathered pine needles on fifteen occasions on the subject property. None of these affiants had observed anyone cutting timber, or planting or harvesting crops on the property over the past thirty years, although each passed along the road frequently.

Stone v. Conder

It is a well established rule that possession of real property cannot be adverse to remaindermen until the death of the life tenant, even though during the lifetime of the life tenant he gave a deed purporting to convey a fee. *Narron v. Musgrave*, 236 N.C. 388, 73 S.E. 2d 6 (1952); *Lovett v. Stone*, 239 N.C. 206, 79 S.E. 2d 479 (1954). William Warren Stone died September 8, 1958. It should be noted that as of that date three of the plaintiffs were minors and under disability, the youngest not reaching her majority until October 8, 1964. A statute of limitations does not run against a minor during minority. *Lovett, supra.* Hence, we must determine if seven years' adverse possession under color of title has been established since October 8, 1964.

Plaintiffs contend the defendants and their predecessors in title have not shown they *actually possessed* the land. Admittedly, what is sufficient actual possession depends on the character of the land and upon the circumstances of its use. We hold that the facts as stated in the trial judge's findings of uncontroverted facts numbers 5, 7, 9 and 10 set forth sufficient actions to establish adverse possession by defendants.

The boundary of the property fronted on a public road near the home of at least one of the plaintiffs, and the property was viewed by him and several of his kinsfolk over the years. Their affidavits do not deny adverse possession. The affiants simply say they have never seen anyone cutting timber or planting and harvesting crops on the property. The occasional going onto the property by one of the plaintiffs to cut a Christmas tree or rake pinestraw for a dog house does not interrupt the continued adverse possession by the defendants and their predecessors in title.

The defendants further rely on G.S. 1-38(b) and (c), contending they have offered prima facie evidence which serves to establish as a matter of law the fact of seven years' possession under color of title. William J. Womble testified that he had listed the property and paid taxes from 1950 through 1976; that corners were well marked with stakes 18 inches to 20 inches high. Subsequent owners offered evidence that they did likewise for subsequent years. Affidavits of the tax collector and tax supervisor corroborated this testimony for the years records were available — from 1969 to 1979. They further testified there were no back

taxes due and payable. It is undisputed that the property was surveyed by a surveyor and a map prepared therefrom, which is recorded in the office of the register of deeds, meeting all the requirements of G.S. 1-38(b)(2). All of these facts together constitute prima facie evidence of adverse possession by the defendants for more than seven years subsequent to 1964, the day when the youngest child of Neil A. Stone reached his majority. The defendants have offered nothing that effectively rebuts either the affidavits showing possession or the prima facie case of adverse possession.

For the reasons stated above, the judgment of the trial judge is

Affirmed.

Judges PARKER and MARTIN (Harry C.) concur.