PAUL MACK BAUGH v. JAMES C. WOODARD, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF CORRECTION

No. 8110SC558

(Filed 2 March 1982)

1. **Rules of Civil Procedure § 56— questions of law—summary judgment**

Summary judgment was proper where only questions of law were presented for determination by the court.

2. **Convicts and Prisoners § 2— prisoner receiving mental health treatment—access to mental health records**

The legislature did not intend that prison-operated mental health facilities be included within the meaning of "treatment facility" as defined in G.S. 122-36(g) so as to give a prisoner undergoing mental health care in prison a right of access to his mental health records pursuant to G.S. 122-55.2. Rather, the rights and privileges of mental health patients who are in the custody of the Department of Corrections are determined by the rules and regulations adopted by the Department pursuant to G.S. 143B-261.1.

3. **Convicts and Prisoners § 2— inspection of mental health records—no common law right**

A prisoner does not have a common law right to inspect his mental health records.

4. **Convicts and Prisoners § 2— denial of access to prison mental health records— no violation of equal protection**

Prisoners receiving mental health treatment who are transferred pursuant to G.S. 122-85 to treatment facilities operated by the Department of Human Resources are not entitled to have their mental health records provided to their attorneys pursuant to G.S. 122-36(g) and G.S. 122-55.2; rather, they

are subject to an administrative rule adopted pursuant to G.S. 143B-261.1 which does not extend to prisoners or their attorneys the right to see the prisoners' mental health records. Therefore, the equal protection rights of a prisoner receiving mental health treatment in prison were not violated by the denial to his attorney of access to his mental health records since there was no disparity concerning the mental health records of prisoners receiving treatment in prison and those receiving treatment in a Department of Human Resources facility.

5. **Constitutional Law § 78; Convicts and Prisoners § 2— denial of prisoner access to mental health records—no cruel and unusual punishment**

The denial to a prisoner of access to his mental health records does not subject him to cruel and unusual punishment.

APPEAL by plaintiff from *Preston, Judge.* Order entered 3 March 1981 in Superior Court, WAKE County. Heard in the Court of Appeals on 2 February 1982.

This appeal arises from a civil class action wherein plaintiff, an inmate of the Goldsboro Unit of the North Carolina Department of Correction and suing in behalf of himself and all prisoners and former prisoners, seeks an injunction requiring defendant to provide each prisoner who has undergone psychiatric or psychological treatment while in prison with direct access to the psychiatric or psychological records generated by such treatment. Defendant, after filing an answer to plaintiff's complaint, moved pursuant to Rule 12(b)(6) to dismiss the complaint. In a hearing on such motion, the court, "out of an abundance of caution and recognizing the status of plaintiff as a prisoner[,] allowed the parties to present live testimony." "Upon considering all the competent evidence[,] the briefs and arguments of counsel for both parties," the court entered extensive findings of fact and made extensive conclusions of law, and ordered that plaintiff's complaint "be dismissed with prejudice." From such order, plaintiff appealed.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Norman B. Smith, for plaintiff appellant.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General James Peeler Smith, for defendant appellee.*

HEDRICK, Judge.

[1] "A Rule 12(b)(6) motion to dismiss for failure to state a claim is indeed converted to a Rule 56 motion for summary judgment

when matters outside the pleadings are presented to and not excluded by the court." *Stanback v. Stanback*, 297 N.C. 181, 205, 254 S.E. 2d 611, 627 (1979); G.S. § 1A-1, Rule 12(b). In the present case, the court considered live testimony, and, hence, its ruling must be reviewed as if it were a ruling on a motion for summary judgment. *See Roach v. City of Lenoir*, 44 N.C. App. 608, 261 S.E. 2d 299 (1980). "Summary judgment may be granted . . . where only a question of law . . . is in controversy. . . ." *Calhoun v. Calhoun*, 18 N.C. App. 429, 432, 197 S.E. 2d 83, 85 (1973). In the present case, plaintiff presents three different legal theories to support his claim for direct access to his mental health records. In two of these theories, *i.e.*, that he has a statutory right and a common law right to direct access, purely legal questions are presented. His third theory rests on three constitutional arguments in favor of direct access; in these arguments, plaintiff contends that a regulation made by defendant which restricts access to mental health records is unconstitutional. Since the general rule is that the constitutionality of a statute is to be determined from merely an examination of the statute itself and of only those matters of which the court may take judicial notice, *State ex rel. Maxwell v. Kent-Coffey Manufacturing Co.*, 204 N.C. 365, 168 S.E. 397 (1933), *aff'd per curiam*, 291 U.S. 642, 78 L.Ed. 1040, 54 S.Ct. 437 (1934), plaintiff's constitutional arguments present a question of law and are properly susceptible to summary judgment. Since this cause revolves only around questions of law, plaintiff's assignment of error directed to the admission of certain testimony pertaining to a constitutional issue is irrelevant to this appeal. Further, it should be noted in this review of the court's entry of summary judgment, that findings of fact and conclusions of law made by a trial judge in his determination on a motion for summary judgment are disregarded on appeal. *Stone v. Conder*, 46 N.C. App. 190, 264 S.E. 2d 760 (1980). Hence plaintiff's assignment of error directed to certain findings of fact made by the trial judge are irrelevant to this appeal.

[2] Plaintiff's first theory is that he is entitled to have access to his mental health records by the language of G.S. § 122-55.2, which prescribes the rights of patients in "treatment facilities," and states,

> that no restriction may be placed upon the right of any patient to communicate with an attorney of the patient's choice,

to have the attorney visit with him and, with the consent of the patient, to have the attorney provided with copies of all pertinent records and information relating to the patient.

Plaintiff argues that he is covered by G.S. § 122-55.2 in that he is a patient in a treatment facility as defined by G.S. § 122-36(g), which states that

"[t]reatment facility" shall mean any hospital or institution operated by the State of North Carolina and designated for the admission of any person in need of care and treatment due to mental illness. . . .

Assuming arguendo that even non-prisoner "treatment facility" patients may require disclosure to them of their mental health records absent a court order compelling such disclosure, *but see* G.S. § 122-8.1(a), the legislature could not have contemplated that prison-operated mental health facilities be included within the meaning of "treatment facility" as defined in G.S. § 122-36(g). If they were so included, then prisoners undergoing mental health care in prison would be entitled, by virtue of G.S. § 122-55.2 and their mere status as mental health patients, to a whole panoply of rights and privileges not afforded to ordinary prisoners not receiving mental health treatment. For instance, G.S. § 122-55.2 (b)(5), (d) would afford a prisoner undergoing mental health treatment with the right, subject to restriction only upon a detailed written statement of the reasons for such restriction, to "[k]eep and use his own clothing and personal possessions"; hence, such prisoner could keep and use more than two sets of personal clothing, shoes with heels of more than one and a half inches in height, and radios worth more than fifty dollars apiece. Ordinary prisoners, on the other hand, generally are limited to no more than two sets of personal clothing, 5 N.C.A.C. 2F .0502(b)(2), (3), (4); are never permitted to have shoes with heel heights of more than one and a half inches, 5 N.C.A.C. 2F .0502(a)(1), (b)(1); and are never permitted to have radios worth more than fifty dollars apiece, 5 N.C.A.C. 2F .0503(6). The legislature could not have intended such a disparity between those prisoners receiving mental health care and those who were not. In construing a statute, "[t]he General Assembly is presumed to have acted in accord with reason and common sense and not to have intended an unjust or absurd result." *Grissom v. North Carolina Department of*

*Revenue,* 28 N.C. App. 277, 280, 220 S.E. 2d 872, 875, *disc. rev. denied,* 289 N.C. 613, 223 S.E. 2d 391 (1976). Hence, prisoners receiving mental health care are not covered by G.S. §§ 122-36(g), -55.2; the statute applies only to mental health patients who are not imprisoned with the Department of Corrections. As to mental health patients who are in the custody of the Department of Corrections, their rights and privileges are determined by the rules and regulations adopted by the Department of Corrections pursuant to G.S. § 143B-261.1. Plaintiff's statutory theory is therefore without merit.

[3] Plaintiff also advances the theory that "prisoners have a common law right to inspect their psychiatric records." The common law rule, however, is that prison records of inmates are confidential and are not subject to inspection by the inmate concerned. *Goble v. Bounds,* 281 N.C. 307, 188 S.E. 2d 347 (1972); *see also Paine v. Baker,* 595 F. 2d 197 (4th Cir.), *cert. denied,* 444 U.S. 925, 62 L.Ed. 2d 181, 100 S.Ct. 263 (1979). Although there are exceptions to the common law prohibition of disclosure, *see, e.g.,* 5 N.C.A.C. 2D .0601(b) (permitting disclosure to an inmate's attorney of medical records, except for psychiatric or psychological evaluations), the rule in *Goble* remains as a refutation of any argument that there is a common law right to inspect any prison records, including prison psychiatric and psychological records. This "common law" theory is without merit.

[4] Plaintiff next argues that disallowing him direct access to his mental health records denies him equal protection of the law in that prisoners receiving mental health treatment who are transferred pursuant to G.S. § 122-85 to treatment facilities operated by the Department of Human Resources for their treatment would be entitled, by G.S. §§ 122-36(g), -55.2(d), to have their attorney provided with their mental health records, whereas those prisoners who remained in the Department of Corrections for mental health treatment would not be so entitled. Plaintiff argues that this disparity in treatment is arbitrary and unconstitutional.

Plaintiff posits a disparity in treatment between those prisoners receiving mental health care in a Department of Human Resources facility and those prisoners who remain in prison for such care. Such a disparity, however, would exist only if the

former group of prisoners were covered by G.S. §§ 122-36(g), -55.2. Such prisoners, having been actually transferred to a DHR-operated "treatment facility" would arguably be subject to G.S. §§ 122-36(g), -55.2, and would thereby be arguably entitled to have their attorneys provided with their mental health records. Because of their status as prisoners, however, they are also arguably subject to any regulations made by the Department of Corrections pursuant to G.S. § 143B-261.1, which states that "[t]he Department of Correction shall adopt rules and regulations related to the conduct, supervision, rights and privileges of persons in its custody or under its supervision"; one such regulation is 5 N.C.A.C. 2D .0601(b), which does not extend to prisoners or their attorneys the right to see their mental health records.

The question, therefore, is which of two arguably conflicting rules apply to prisoners receiving mental health care in a DHR-operated facility. When a statute is reasonably susceptible of two constructions, one of which will raise a serious constitutional question and the other will avoid such question, the court must adopt the construction which avoids the constitutional question. *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977). Since a disparity raising a constitutional question exists only if G.S. §§ 122-36(g), -55.2 apply to prisoners receiving care in DHR-operated facilities, the proper construction of those statutes is to restrict their applicability to non-prisoner mental health patients. With respect to those prisoners receiving care in DHR-operated facilities, G.S. § 143B-261.1 and 5 N.C.A.C. 2D .0601(b) apply, as they do to those prisoners who remain in prison for their mental health care. Hence, plaintiff's alleged disparity disappears in that no prisoners are allowed access to their mental health records, and plaintiff's equal protection argument must fail.

Plaintiff next argues that denying him the right to inspect his mental health records deprives him of a property right without affording him procedural due process.. "At the threshold of any procedural due process claim is the question of whether the complainant has a liberty or property interest, determinable with reference to state law, that is protectible under the due process guaranty." *Maines v. City of Greensboro*, 300 N.C. 126, 134, 265 S.E. 2d 155, 160 (1980). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of

it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L.Ed. 2d 548, 561, 92 S.Ct. 2701, 2709 (1972). As discussed above, there are no statutory or common law rules which would secure to a prisoner a property right in the mental health records generated while he is in prison; plaintiff, therefore, has no more than a unilateral desire for access to his prison mental health records. He has no legitimate claim of entitlement protected by procedural due process. His "due process" theory is without merit.

[5]  Finally, plaintiff advances the theory that denying him direct access to his mental health records "constitutes cruel and unusual punishment" in violation of the Eighth Amendment. Penal measures violate the Eighth Amendment if they "are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' . . . or . . . 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03, 50 L.Ed. 2d 251, 259, 97 S.Ct. 285, 290 (1976). The penal measure at issue in the present case is the withholding from prisoners direct access to their prison mental health records. Failure to provide such access, particularly in light of the defendant's interest in maintaining the confidentiality of the records so as to preclude the possibility of prisoner retaliation against, *e.g.*, any inmates who may have provided defendant with information about a prisoner's behavior, can hardly be said to offend "evolving standards of decency." Similarly, the mere withholding of direct access from prisoners can hardly result in the infliction upon the prisoner of *any* pain, much less "unnecessary and wanton pain." Plaintiff's "cruel and unusual punishment" theory is therefore without merit.

Having concluded that all of plaintiff's legal theories are unavailing, we hold that defendant was entitled to judgment as a matter of law and that the entry of what amounts to a summary judgment against defendant must be

Affirmed.

Judges HILL and BECTON concur.